Juanita MOSLEY, Administratrix C. T. A. of the estate of Grady G. Mosley, Appellant,

v.

UNITED STATES of America, Appellee.

No. 75–1276.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 9, 1975.

Decided March 3, 1976.

---

William H. Holdford, Raleigh, N. C. (Narron, Holdford, Babb & Harrison, Raleigh, N. C., on brief), for appellant.

Jack B. Crawley, Jr., Asst. U. S. Atty., Raleigh, N. C. (Thomas P. McNamara, U. S. Atty., Raleigh, N. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

This controversy is over the computation of damages recoverable from the United States by the administratrix of the estate of Grady G. Mosley who died in the care of a Veterans Administration hospital in North Carolina through its negligence. The cause of action was provided by the State statute affording compensation for wrongful death;[1] the right of action by the Federal Tort Claims Act.[2] The liability of the Government was found by the District Court, was confirmed on the first appeal of this action, *Mosley v. United States*, 499 F.2d 1361 (4 Cir. 1974) and is no longer contested. The case was remanded only for redetermination of damages.

The law of North Carolina, which prevails here,[3] stipulates: "The plaintiff in such action may recover such damages as

---

1. General Statutes of North Carolina, NCGS 28–173 and 174. The 1969 and subsequent amendments enlarging the items of loss to be considered are inapplicable, the death occurring December 10, 1968, before their effectiveness, and the legislation not being retroactive,

*Bowen v. Constructors Equipment Rental Co.,* 283 N.C. 395, 196 S.E.2d 789 (1973).

2. 28 U.S.C. § 2671 et seq.

3. 28 U.S.C. § 2674.

are a fair and just compensation for the *pecuniary injury* resulting from such death." The accented phrase has been translated as "the present value of the net pecuniary worth of the deceased, to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy" and "may include other sources of income for life, such as disability income, retirement benefits, pensions, and annuities." *Mosley v. United States*, supra, 499 F.2d 1361, 1362-3 (4 Cir. 1974). On the remand, the District Court, sitting without a jury, gave net damages of $23,508.25 for the wrongful death, that is for the deceased's "pecuniary worth"—the pecuniary loss to his beneficiaries. To this sum $2,000 was added for the decedent's pain and suffering prior to his death. *In re Peacock*, 261 N.C. 749, 136 S.E.2d 91, 93 (1964).[4] This judgment is now appealed by the administratrix, the widow of Grady Mosley, and solely upon the ground of inadequacy of the damages. The United States does not question the assessment for the pre-death pain and suffering.

Particularized, her grievance is in the District Judge's reckoning of her husband's worth—the estate's pecuniary loss. Generally, inaccuracies are said to exist in the fixing of the life and the working-life expectancies; the earnings to be had in the period and deductions from his earnings; and other income and the deductions therefrom.

### I.

The District Court, after a painstaking study of the health of Grady Mosley, his physical condition prior to and during his last hospitalization, and the character of his employment, made this finding:

"6. Had the negligence of defendant's employees not caused his earlier demise in December, 1968, Mr. Mosley had a *life expectancy of six years*, but the condition of his health was such that had he been able to return to work at all, he could not reasonably have *expected to work more than two-thirds of the time* during this six years." (Accent added.)

This is appellant's first salient of attack in this cause. We cannot justifiably say that this finding should be discarded as clearly erroneous.

Mr. Mosley died on December 10, 1968 at the age of 44. His occupation had been that of a railroad locomotive engineer. For a number of years he had suffered from steadily worsening rheumatic heart disease involving mitral stenosis (a valve stoppage). Upon expert medical testimony the District Judge characterized the ailment as "a very serious one"—it was "highly questionable as to whether the proposed valvulotomy operation would have been successful" in the circumstances of his condition. He concluded:

"5. In any event, the valvulotomy is a palliative procedure which does not effect a cure. Mosley's long-term prognosis was not good, and his symptoms would have increased as time passed. Very few patients with this condition ever return to work."

These subsidiary facts warranted, in our judgment, the Court's ultimate adjudication of the life expectancy and prospective working-life of the decedent.

### II.

The next inquiry was the amount of the earnings which could be fairly estimated as receivable by him in his working-life expectancy. The District Judge answered it in this way:

"7. An able-bodied man working in employment comparable to that which Mr. Mosley would have had available to him during the remainder of his life expectancy could have reasonably expected to have gross earnings from his employment as follows:

---

4. This element was originally allowed by the District Court and is not now disputed.

```
1969  -  $12,944.00
1970  -  $13,644.00
1971  -  $15,165.00
1972  -  $16,164.00
1973  -  $19,144.00
1974  -  $19,300.00

Total    $96,361.00
```

"Since Mr. Mosley could have reasonably expected to work only two-thirds of the time during the remainder of his life expectancy, his gross earnings would have been only two-thirds of this amount or $64,240.00."

■ Towards reaching "the present value of the net pecuniary worth of the decedent" the trial judge quite correctly deducted from the gross earnings of $64,240.00 the amount of his personal living expenses of $11,563.20. *United States v. Brooks*, 176 F.2d 482, 484–485 (1949). The parties do not differ on the propriety or reasonableness of this sum. It would reduce the earnings to $52,676.80.

### III.

A deduction contested by the appellant-administratrix was made in the trial court for State and Federal income taxes amounting to $6,424.00, computed at 10% of the just stated gross earnings of $64,240.00. (No objection was urged by either party as to the rate.) The validity of this subtraction must be judged by the law of North Carolina for, as already noted, it is her law that defines the damages. No decision of the State's highest court nor statutory direction on this point has been cited us.

■ We are of opinion that the income taxes are proper deductions in order to arrive at the "pecuniary injury" retrievable by the estate.[5]

For our position we find convincing support in the demonstrably logical decision of the Federal District Court for South Carolina, *Brooks v. United States*, 273 F.Supp. 619 (1967), with opinion by District Judge, now Circuit Judge, Russell.[6] In a comprehensive review of the doctrine the judge observes the want of unanimity among the authorities and the pro and con factors for imposing the deduction. Id. 628–632. He begins:

"The argument in favor of the deduction is compelling. The beneficiaries of an action such as this are only entitled to recover the amount of their actual loss. If the deceased had lived, his future earnings would have been subject to income taxes and the amount available for those entitled to support from him would have been *after taxes*. However, damages awarded for wrongful death, so far as they encompass prospective earnings, are non-taxable.[7] Unless such damages take income taxes into consideration, the bene-

---

[5] Two considerations which are the foremost concerns upon which some courts have premised their refusal to permit income tax deductions to be submitted to the jury are negatived here: (1) this is not a tort action by a surviving victim wherein a change of circumstances may reasonably be foreseeable; and (2) it is a non-jury case, thus obviating the complexity and confusion which might result if the tax ascertainment were left to the jury.

There is no need to decide here whether these objections might be overcome even in a jury case by having the court submit to the jury special issues, with directions not to consider income taxes, for findings on the amount of the earnings lost because of the injury or death and leaving to the court the calculation of the taxes after the verdict. It is mentioned now simply to suggest that these apprehensions can be readily obviated.

[6] No decision by the Court of Appeals of this circuit has been found. Concededly, there is a division of authority on whether the question of income taxes should be submitted to. the jury for consideration in arriving at the amount of earnings lost by the injured or deceased claimant. In 63 A.L.R.2d 1393 is found a note on the conflicting views, the subject case allowing submission, *Floyd v. Fruit Industries, Inc.*, 144 Conn. 659, 136 A.2d 918 (1957).

[7] A distinction to be borne constantly in mind is between the taxability of the damages awarded (they are not taxed) and the taxes on the earnable but lost income which is proved as one of the elements to be considered in computing the damages suffered (there income taxes are deductible). Obviously, in the latter circumstance evidence of the amount of the taxes is appropriate. (Footnote added.)

---

ficiaries will accordingly be receiving more than they would have had the deceased lived."

Quoting from Professor Charles Alan Wright in 19 Ohio S.L.J. 157 (1958), he continues:

" 'The hard fact—inevitable in a subject which grew first carelessly and then explosively—is that a number of the existing rules cannot be justified in theory. For example, I think a good argument can be made for ignoring income tax in computing damages in a suit for personal injuries, but that it is completely unsound to use earnings before tax as a measure in a death action. Authoritative doctrine, to date, has made no distinction between the two kinds of suits.' "

The opinion in *Brooks* concludes:

"It is clear, therefore, that this issue is an open one in this jurisdiction. Free thus to follow the commands of reasonable justice, I am of opinion that the arguments for considering such income tax consequences in a death case (as distinguished from a personal injury case) are so logical and compelling, especially in a non-jury case, that a reasonable deduction from prospective earnings on account of income taxes should be made in this case."

With the close canvass available in the *Brooks* opinion, we are saved extensive discussion and repeated distinguishment of the precedents generally upon the allowance of the tax deduction.

In the present case the District Judge spoke pithily to the issue:

"Although there are no North Carolina cases dealing specifically with the question of the deductibility of income taxes from the probable gross earnings of a decedent in a wrongful death case, the Supreme Court of this state has repeatedly defined 'the pecuniary injury resulting from such death' as the 'net present pecuniary worth of the deceased as ascertained by deducting the probable cost of his own living and his ordinary or usual expenses from the probable gross income derived from his own exertions based upon his life expectancy.' *Bryant v. Woodlief*, 252 N.C. 488, 114 S.E.2d 241 (1960). *It seems hardly arguable that 'ordinary or usual expenses' do not encompass income taxes. In any event, the better considered cases seem to require this result.*" (Accent added.)

He aptly footnotes:

"Under the withholding tax laws, state and federal, the wage earner such as Mr. Mosley never has his hands upon that part of the tax withheld which is necessary to satisfy his tax liability, and it would be a strange rule which would allow his beneficiaries to recover from a tortfeasor that which he never could have brought home himself. Mr. Mosley's tax returns offered in evidence in this case indicated that in 1965 he paid less than 10 per cent of his gross income as taxes, approximately eleven per cent in 1966, between eleven and twelve per cent in 1967 and between twelve and thirteen per cent in 1968. The ten percent deduction from gross earnings allowed by the court in this case is conservative."

We now embrace the resolution by *Brooks* and the District Court of the question.

### IV.

An additional item of damages pressed by the administratrix is Grady Mosley's right to disability payments under the Railroad Retirement Act, 45 U.S.C. § 228a et seq., during the period of his prognosed total physical disability. No allowance was made for this entitlement by the District Court. His life expectancy was put at six years but with ability to work only two-thirds of the time, thus leaving one-third of the six as years of complete disability. This two years is the period for which the administratrix now claims the railroad disability benefits. The monthly figure is approximated at $600.00 with a total of about $14,400.00 for the 24 months.

In our view the Court was obliged to allow this amount—after an exact calculation of it—in the damages due the estate.

This is dictated by the Supreme Court of North Carolina, in *Bryant v. Woodlief*, supra, 252 N.C. 488, 114 S.E.2d 241, 246 (1960), with this explanation:

> "Even so, we do not understand that the general rule in this respect would exclude the inclusion of income from an annuity, life estate, *retirement pay* or other income for life only, in arriving at the pecuniary loss sustained by reason of wrongful death." (Accent added.)

This was also the direction in the prior appeal in this litigation, *Mosley v. United States*, supra, 499 F.2d 1361, 1363 (4 Cir. 1974) and quite explicitly in *Sinovich v. Erie Railroad Co.*, 230 F.2d 658 (3 Cir. 1956).

The Government would reject this allowance. Its contention is that the finding of the District Judge on working-life expectancy did not mean the partitioning of the six years into an initial work-period of four years followed by two years of disability. In this it presses that the ability to work two-thirds of the remaining life-period means that the deceased could have worked "only two out of every three working days throughout the entire six-year period". No warrant for this interpretation appears in the text or context of the trial judge's findings or elsewhere in the record or history of this suit.

However, we further think, that against this allowance of the disability benefits must be set off the sum of the survivors' benefits under the Retirement Act paid to the widow and children of the deceased from the date of her intestate's death. Since the disability benefits were honored for a period of two years during the hypothetical deferment of death and the survivors' benefits have actually been paid from the real date of death, the unabated payment of the former would result in a duplication of benefits. To avoid this overlapping, the disability recovery is now credited with the amounts paid as survivors' entitlements.

To do otherwise, furthermore, would lead to a disruption of the pattern of the Retirement Act. Its indemnities—the first, the employee's life-time benefits and, a second, the survivors' benefits—are an entirety, the second an inseparable sequence of the former. For this reason the two provisions cannot be analogized to the disability indemnity given by statute and a survivor's indemnity afforded by a life insurance policy carried by the deceased at his expense. This distinction is exampled in *United States v. Brooks*, 176 F.2d 482, 485 (4 Cir. 1949), the statutory benefit declared deductible, the insurance nondeductible from the recovery. A further difference is observable, in that, the employee was not the only one who paid for the fund, both the Government and the railroad contributing substantially.

The money figures on the decedent's prospective disability annuities and the survivors' were put in evidence. They indicate that the sums paid the survivors may exceed the decedent's allowance, and this may explain why the District Judge gave nothing to the administratrix for decedent's participation under the Act. If the administratrix believes that the decedent's due was more than that of the survivors, she has leave to apply to the District Court after the issuance of our mandate for a redetermination of the deceased's railroad retirement annuity and that of his survivors.

## V.

To sum up, the District Judge allotted these damages to the administratrix for the use and benefit of the widow and children of Mr. Mosley:

| | |
|---|---:|
| Reasonably expected gross earnings during his six-year life expectancy left after his death in December 1968 | $96,361.00 |
| Since he could have worked only two-thirds of the six years, his gross earnings would have been one-third less | -32,121.00 |
| This leaves for the expected earnings in his working-life | 64,240.00 |

| From this amount are taken: | | |
|---|---|---|
| Personal living expenses | $11,563.20 | |
| Income Taxes | 6,424.00 | -17,987.20 |
| Net earnings for working-life expectancy | | $46,252.80 |
| Allowed for conscious pain and suffering | | 2,000.00 |
| | | $48,252.80 |

---

■ From the net earnings of $46,252.80 the District Court deducted $22,744.55 which was paid the widow and children by the United States Veterans Administration as decedent's service-connected benefits, thus decreasing the recovery for such earnings to $23,508.25. Although the administratrix vigorously opposes this credit to the damages, plainly it was proper.

The allowance made by the Court for Grady Mosley's net earnings obviously was intended to represent the wage amounts presumably he would have expended in their support and maintenance. For the six years of life expectancy the Veterans Administration paid the wife and children the sum of $22,744.55. Also, it was obligated to pay the widow and children, for the remainder of her lifetime and until the youngest child reached 18 years of age, an additional amount of $71,094.00.

Factually, this seems a fair equivalent for the probable net earnings of Grady Mosley during the years he might have worked but for his death. Equitably, too, it appears as a just and fair subtraction. To require the Government to recompense the estate for the destroyed earning power of the deceased and at the same time to give further succor by way of Veterans Administration benefits for the support and maintenance of his surviving family would indisputably let the estate recover from the United States double the loss of the veteran's prospective earnings.

Legally, too, the deduction has been accorded approval. It is dictated unequivocally by *Brooks v. United States*, 337 U.S. 49, 53–54, 69 S.Ct. 918, 93 L.Ed. 1200 (1949) and quite clearly by this Circuit in *United States v. Brooks*, supra, 176 F.2d 482, 485–486 (4 Cir. 1949). Upon these grounds we uphold the determination of the District Court (*Mosley v. United States*, 405 F.Supp. 357 (EDNC 1974)).

■ The upshot is that judgment should go, as it did in the District Court, for the administratrix in the aggregate of $25,-508.25,[8] comprised of earnings of $23,508.25 plus $2,000.00 for pain and suffering.

Affirmed.

WIDENER, Circuit Judge (concurring and dissenting):

I concur in the opinion of the court for the reasons stated by Judge Bryan except in one small part.

I do not agree that the payments to the survivors made after death from the Railroad Retirement Fund should be credited against the disability payments from the Railroad Retirement Fund used in the computation of damages. I am of this opinion because the decedent paid into the Railroad Retirement Fund, see the current 26 U.S.C. § 3201 and its predecessors, and the benefits to his survivors seem to me, since he paid at least in part for them, to be analogous to the Veterans Administration insurance poli-

---

**8.** It is not intended now to foreclose the privilege heretofore accorded the administratrix to apply for a recomputation of the sum payable under the Railroad Retirement Act.

cy ruling found in *United States v. Brooks*, 176 F.2d 482, 486 (4 Cir. 1949).