Cooke, J.
Plaintiff, aged 20 and claiming to have been mugged and thrown upon the subway tracks at the Canal Street station, suffered amputation of both legs below the knees while lying upon the tracks and when struck by defendant’s train.
First, there was a trial on the issue of liability only, resulting in a verdict in favor of plaintiff. The interlocutory judgment entered thereon was affirmed by the Appellate Division, *140 one Justice dissenting. Then followed a separate trial on the issue of damages in which a verdict of $1,800,000 was rendered. Defendant now appeals from an order of the Appellate Division which unanimously reversed, on the law and the facts, the Supreme Court judgment entered May 29, 1973, in favor of plaintiff, and granted a new trial on the issue of damages, unless plaintiff stipulated to reduce the verdict to $930,000 and to entry of an amended judgment accordingly, in which event, the judgment as amended and reduced, was to be affirmed. Plaintiff so stipulated.
Where a motorman of a subway train sees a person lying on the tracks abutting a subway station platform, from such a distance and under such other circumstances as to permit him, in the exercise of reasonable care, to stop before striking the person, the motorman’s failure to avoid the accident may be found to be negligence (Noseworthy v City of New York, 298 NY 76, 78-79; Clarke v City of New York, 295 NY 861; Brennan v City of New York, 277 App Div 854; Mikorski v City of New York, 270 App Div 769, mot for lv to app den 270 App Div 819). With this general rule in mind and aside from testimony as to the actual occurrence of the tragedy, considerable proof was submitted as to the locale of the accident, sight distances and stopping capabilities of subway trains.
The platform in question, at the Canal Street subway station of the IND Division, was used by downtown travelers and ran in a generally northerly and southerly direction for a length of 660 feet. Adjacent to it and' to the west were the southbound local tracks. As a train proceeding south comes into the Canal Street station, at a point 44 feet south of the north end of the station, it approaches a transition or easement curve, based on a 1,000 foot radius, it being described as a slight curve to the left. While Joseph Sigreti, defendant’s motorman, was operating a four-car train from the right side of the lead car along these southbound local rails, plaintiff was run over by the first half of the front vehicle and was removed from underneath that car, at a point 320 feet south from the north end of the station.
During the liability trial, evidence was adduced relevant to the crucial question as to whether Sigréti, who admittedly saw plaintiff lying across the tracks, in the exercise of reasonable care, should have halted the train before impact. On the one hand, there was submitted testimony of: the plaintiff that he was unable to get up but saw the train at the beginning of the *141 station about 300 to 400 feet distant; Marshall, a Transit Authority engineer familiar with the station, that upon entering the station from the north one could see clearly 320 feet to the point where plaintiff was extricated from beneath the train; Doty, a former motorman for defendant and a paid expert called by plaintiff, that a motorman entering the station could see approximately 500 feet of the tracks ahead; and Patrolman Lilley of the Transit Police Department, who came to the scene minutes after the accident, that the lighting conditions of the platform and tracks on the downtown side of the station were good and that a person could see from one end of the platform to the other. While Sigreti had testified that his train had dynamic brakes and that he had entered the station at 30 miles per hour, Doty stated that in his opinion a four-car train equipped with such brakes and traveling at that speed could be stopped in "approximately 100, 135 to 150 feet”, if the emergency brakes were immediately applied. On the other hand, McCafferty, a trainmaster and former motorman instructor employed by defendant, opined that such a train could be stopped in an emergency in 294 feet, including the 44 feet traveled during reaction time. A car is 60 feet long. Sigreti testified that, upon entrance into the station, one is able to first see the full length of the station when between a car and a half to two car lengths into the station, at which approximate point he first noticed plaintiff’s body on the tracks. He also related that in making his normal Canal Street stop he would have proceeded between 120 and 180 feet further south beyond plaintiff’s extended form. However, on an examination before trial, Sigreti testified that "[a]s I entered the station I [saw this] person lying right across the --” and that, at that time, said person was "around 300 feet” from the front of the train. On the day of the occurrence, the motorman filed a report reading in part: "Out of 168th Street. Entering Canal Street station. Noticed male laying across tracks”; and, when interviewed one week later, told a detective that "as he approached the station, he saw Mr. Coleman lying across the tracks”.
Appellant ascribes various reasons for reversal, chiefly the following instruction to the liability jury, to which exception was taken: "Now, in this case the plaintiff is an interested witness because he seeks to recover. The witnesses, all employees, including Sigreti, even though he’s no longer in the employ of the Transit Authority, is an interested witness *142 because he’s charged with the negligence. Therefore, he’s an interested witness when he comes in and denies his conduct and his act. The expert of the Transit Authority is an interested witness because he works for the Transit Authority.” Under the common law, a person was incompetent to testify, if interested in the event, on the supposed ground that he or she was unworthy of belief (2 Wigmore, Evidence [3d ed], § 576; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4512.02) but, for the most part and under statute, interest as a disqualification has been abolished (CPLR 4512; but see CPLR 4502, 4519). This abolition left untouched the relevancy of all facts which bear on the probable partiality of the witness by reason of his interest in the event of the suit (3A Wigmore, Evidence [Chadbourn rev, 1970], § 966), such an interest in a cause being a circumstance available for impeachment (King v New York City & Hudson Riv. R. R. Co., 72 NY 607, 611; Registered Country Home Bldrs. v Lanchantin, 10 AD2d 721; Christensen v Pittston Stevedoring Corp., 283 App Div 1088).
The scope of the circumstances of interest that may be employed to discredit witnesses has not been definitely circumscribed, but it is clear that it is not confined to financial bases alone (Noble v Marx, 298 NY 106, 111, Wohlfahrt v Beckert, 92 NY 490, 496; Hoes v Third Ave. R. R. Co., 5 App Div 151, 155; 3 Bender’s New York Evidence, § 147.05, subd [2]; 3A Wigmore, Evidence [Chadbourn rev, 1970], § 966). It is firmly established, for example, that an actor in the transaction at issue, having a motive to shield himself from blame, would be an interested witness, even though not a party to the action (Lee v City Brewing Corp., 279 NY 380, 384; Gaffney v New York Cons. R. R. Co., 220 NY 34, 37; Volkmar v Manhattan Ry. Co., 134 NY 418, 422). Thus, Sigreti, who was the only witness who testified directly as to the point from which he first saw plaintiff lying on the tracks, was an interested witness.
The mere employer-employee relationship existing between a party and a witness, either at the time of the incident in suit or at the time of trial, does not make the employee an interested witness, although it may give rise to bias (Noseworthy v City of New York, 298 NY 76, 79, supra; Della Croce v City of New York, 3 AD2d 920; Hoffman v Florida East Coast Hotel Co., 187 App Div 146, 151). The bias of a witness in favor of the party calling him may be shown by evidence of family, business or close social relationships to affect his *143 credibility (People v Brown, 26 NY2d 88, 94-95; Keet v Murrin, 260 NY 586; People v Webster, 139 NY 73, 85), and it is for the same purpose that it is competent to show the interest of a witness in the case. Although distinct, bias and interest of witnesses are closely related as methods of impeachment (see Ryan v Dwyer, 33 AD2d 878; NY PJI [2d ed] 1:92; Richardson, Evidence [Prince — 10th ed], §§ 493, 503).
Defendant contends that, with the exception of motorman Sigreti, it was error to charge in effect that all employees were interested. Other than Sigreti and McCafferty, the testimony of the employees dealt, for the most part, with undisputed matters such as dimensions of the platform, visibility, point of impact, observations as to plaintiff’s physical condition and statements made by Sigreti. Although the court characterized McCafferty as interested and Doty as not interested, to which latter portion exception was not taken, each testified that the stopping distance of a train proceeding at 30 miles per hour was under 300 feet. Although they differed as to the stopping distance, there were various items of proof indicating that the motorman had seen plaintiff when more than 300 feet distant —contrary to Sigreti’s at-trial testimony.
The Appellate Division determination that the charge, indicating that employees of the defendant were interested witnesses, was not reversible error, in view of the nature of their testimony, is consistent with precedent. In Jobman v Hogan & Sons (216 App Div 736, affd 243 NY 581), we affirmed, without opinion, an order of the Appellate Division which affirmed a judgment for plaintiff, where the trial court charged that employees of defendant not connected with the accident were interested witnesses and where exception was taken. The authorities cited by defendant and in one dissent are clearly distinguishable in that they also involve other errors. In Della Croce v City of New York (3 AD2d 920, supra), the verdict was excessive or against the weight of the evidence, there was lack of proof, and the jury was not apprised of the applicable principles attendant the doctrine of res ipsa loquitur so as to appreciate the importance of determining the credibility of the bus operator. In Noseworthy v City of New York (298 NY 76, 81, supra), a death case, the court refused a proper request for a charge as to the degree of proof to which plaintiff was held and there "were other incidents and rulings at this trial of which plaintiff rightfully complains.” In Hoffman v Florida East Coast Hotel Co. (187 App Div 146, 152, supra), three *144 errors in respect to the charge were pointed out, with a statement that it should not be assumed that the court approved all other rulings made on trial.
Defendant urges that plaintiff was guilty of contributory negligence, that the jury could have inferred that he fell to the tracks as a result of his intoxication, rather than being thrown there by muggers, and that the trial court, in responding to a juror’s question, removed the issue of contributory negligence from the jury’s consideration. The jury was charged: "in order for the plaintiff to recover in this action he must also establish an additional factor, that is his own freedom from any contributory negligence. In other words, plaintiff also had an obligation to exercise that degree of care for his own safety which an ordinarily prudent person would have exercised under the same circumstances. * * * If the plaintiff failed for whatever reason to exercise that degree of care which a reasonably prudent person would have exercised under the same circumstances, then he would have been guilty of contributory negligence and could not recover.” These instructions, plus their repetition in substance upon the jury’s return for advice, placed contributory negligence before the jury. In response to a juror’s inquiry: "On drunkenness, just when is drunkenness considered negligence? One drink, two drinks, three drinks?”, the court responded: "There is no such test. Unless you think he was drunk and there’s proof that he was drunk you may not find him drunk. The only evidence in this case is he had three drinks, and Alcindor says he couldn’t say he was drunk, and nobody else in the case says he was drunk. That’s the only evidence in the case.” Although the accident occurred in the early morning, plaintiff left his place of employment at 3:05 a.m., went to a bar looking for friends but had nothing to drink, went to another bar where he had two drinks of scotch and then returned to the first bar where he consumed another. He testified he was not drunk and no one testified he was. Lieutenant Alcindor, employed by the Transit Authority, in helping remove plaintiff from the tracks and in coming face to face with him, smelled alcohol but stated he was not prepared to say that plaintiff was drunk. The three drinks and Alcindor’s observations were mentioned in the factual summary of the charge. The evidence of alcoholic breath and the three drinks is not in itself proof of intoxication and the court did not err in telling the jury that whether plaintiff had one, two or three drinks *145 was not a test for intoxication (cf. Eisenberg v Green, 33 AD2d 756; Burnell v La Fountain, 6 AD2d 586; see Pellaton v Franzese, 45 AD2d 761).
Defendant contends that it was deprived of a fair trial when the court, upon being asked for an "indication as to taxability of the award to the plaintiff”, instructed the jury: "Don’t concern yourselves with that. It forms no part of your deliberations. It is not an element to be concerned by you. Do not consider that at all.” One dissenter suggests that "[a]ll that would be required is an instruction that any award made to the plaintiff as damages is not subject to Federal and State income taxes, and the jury should not consider such taxes in fixing the amount of any award made to the plaintiff.”
Although there is division on the question, the great weight of decisional authority in this country, in respect to a case such as this, is to the effect that the Judge was not required to charge the jury that any award to the plaintiff would be free of income tax (e.g., Blake v Delaware & Hudson Ry. Co., 484 F2d 204, 207; Matter of Marina Mercante Nicaraguense, S. A., 364 F2d 118, 125-126, cert den 385 US 1005; McWeeney v New York, New Haven & Hartford R. R. Co., 282 F2d 34, 35-39, cert den 364 US 870; Stokes v United States, 144 F2d 82, 87; Towli v Ford Motor Co., 30 AD2d 319; D'Amico v Resnik, 22 Misc 2d 545, 548 [Scileppi, J.]; see 13 NY Jur, Damages, § 79; Encyclopedia New York Law, Damages [1975 Supp], §§ 1031, 1142; 63 ALR2d 1393, 1398, § 4).
The order of the Appellate Division should be affirmed, with costs.