■ LOUISE GILLIARD, as Administratrix of the Estate of ROBERT GILLIARD, Deceased, Respondent, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Appellant and Third-Party Plaintiff-Appellant. LEO C. MAITLAND, Third-Party Defendant-Respondent, et al., Third-Party Defendants.—Judgment of the Supreme Court, New York County, entered August 13, 1979, reversed, on the law and the facts, and the matter remanded for a new trial on the issue of damages only, without costs, unless, within 30 days after service of a copy of the order to be entered herein, plaintiff shall execute and file in the office of the clerk of the Supreme Court, New York County, a stipulation agreeing to reduce the verdict herein to $100,000. In the event that such stipulation is filed, the judgment, as modified by the stipulation, is affirmed, without costs. The only issue in dispute is the damage award of $200,000 to plaintiff in this malpractice action. On March

4, 1974 plaintiff's intestate was admitted to Sydenham Hospital complaining of discomfort in his right groin area. His condition was diagnosed as a right inguinal hernia. Two days later he was operated upon. Because of improper practice in the administration of a general anaesthesia, he suffered cardiac arrest and went into a coma. On March 11, 1974 he died. The deceased was a bachelor, 58 years old at the time of his death. His sole surviving distributees are a brother and sister. Although the deceased lived alone in a single room, he and his sister were close and he spent much time assisting her in her household chores and shopping for her, and he ate at her home almost every night. By statute (EPTL 5-4.3) damages in wrongful death cases are limited to pecuniary injury suffered by the distributees of decedent's estate (Parilis v Feinstein, 49 NY2d 984). Here, such damages are susceptible of rough, but reasonably certain calculation. For some 11 years prior to his admission to the hospital, deceased had been a maintenance employee of the New York City Department of Health. His annual earnings at the time were $9,100. It was stipulated that had he continued in the same job until 1979, his annual earnings would have increased to $12,000. At his death he had a statistical work life of 8.7 years and a life expectancy of 16.6 years. Thus, his earnings for the balance of his work life would have approximated $90,000. To give the plaintiff the benefit of every doubt we will assume something which was neither stipulated nor proven—that upon completion of his statistical work life, plaintiff's intestate would have received a pension, which, coupled with his Social Security, would equal 50% of his salary, or $6,000 per year for the eight years representing the balance of his life expectancy. Coupled with his earnings, funeral and burial expenses, this would aggregate to a total of approximately $140,000. Out of this sum income and Social Security taxes would have to be paid, pension payments and other normal payroll deductions made, and living expenses, such as clothing, carfare, luncheon expenses and room rent, however minimal, incurred. Assuming that all that remained over and above necessary expenses reduced by the present value of the remaining lump sum, and providing an adequate hedge for inflation, was paid over to deceased's distributees, $100,000 would be an exceedingly generous estimate of the remaining balance. Hence, any damage award beyond that amount is plainly excessive. Concur—Kupferman, J. P., Bloom and Carro, JJ.

Fein and Lupiano, JJ., dissent in a memorandum by Fein, J., as follows: The facts are fairly stated in the court's memorandum. Damages in a wrongful death action are limited to "pecuniary injuries" suffered by the distributees of decedent's estate (EPTL 5-4.3). As stated in the case cited by the majority, "Such damages are limited to loss of support, voluntary assistance and possible inheritance, as well as medical and funeral expenses incidental to death" (Parilis v Feinstein, 49 NY2d 984, 985). However, as that very case notes (p 985), "calculation of pecuniary loss is a matter resting squarely within the province of the jury." Although that was written in the context of the death of a 12-year-old boy, the rule is equally applicable to cases such as this. (Countryman v Fonda, Johnstown & Gloversville R. R. Co., 166 NY 201, 208-209; Weir v Cosmopolitan Carriers, 249 App Div 758). Here the majority has used the life expectancy tables and work life statistical reports in determining that decedent had a statistical work life of 8.7 years and a life expectancy of 16.6 years and made a mathematical calculation computing his earnings and other income for the balance of his life had he lived. However such tables are "only slight evidence of the expectancy of life of any particular person" (Harley v Eagle Ins. Co. of London, England, 222 NY 178, 186). These elements are to be

considered together with proof of the health, constitution, habits and mode of living of the person whose life expectancy is in question. A jury has a right to conclude and should be charged to consider that the duration of a particular person's life may very well have varied from the statistical tables. The jury had a right to consider that the decedent might have lived longer and worked longer than the tables indicated for a man of his years had he not met his death because of the malpractice for which defendants have been held liable. The rigid application of the expectancy tables to his proven earnings precludes the possibility that he might have lived much longer and had annual earnings beyond the period covered by such expectancy. The damages recoverable are not only incapable of exact proof, they are not susceptible to mere mathematical calculation or computation (Hinsdale v New York, New Haven & Hartford R. R. Co., 81 App Div 617, 621). The jury had a right to find that decedent, a man of good health and simple habits, might have outlived the estimate in the mortality tables and had earnings well beyond that suggested in the work expectancy statistics. The measure of damages for pecuniary loss is complex. It is not to be constricted by mathematical formulas. The court should not set aside the verdict of the jury as to damages unless they are so clearly excessive as to be "beyond all measure, unreasonable." (Coleman v Southwick, 9 Johns 45, 52; Weir v Cosmopolitan Carriers, supra; Tenczar v Milligan, 47 AD2d 773). By that standard the jury's verdict should not be disturbed. The damages were fixed by the jury on the basis of all of the evidence and a careful charge, and an experienced Trial Justice declined to set aside the verdict. That should suffice. Although generous, the verdict was neither excessive nor unreasonable. Accordingly, the judgment, Supreme Court, New York County, entered August 13, 1979, should be affirmed, together with costs.