OPINION OF THE COURT
Edward J. Greenfield, J.
This posttrial motion raises questions of major significance for the personal injury trial Bar, in reviewing whether or not taxes are to be deducted from future earnings in an assessment of special damages. Such a review is called for in the light of two recent cases, one by the United States Supreme Court and one by the Appellate Division, First Department, which are urged as authorities for requiring a deduction for taxes from future earnings.
After the first trial of this personal injury action by a marine welder for disabling injuries he sustained when struck by a falling steel lashing cable while working in the hold of defendants’ vessel, in which the setting aside of the jury verdict in favor of defendants was Unanimously affirmed (Louissaint v Hudson Waterways Corp., 78 AD2d 596), a second trial was held which resulted in a jury verdict in favor of the plaintiff.
At the trial, there was testimony that plaintiff, 44 years of age at the time of the accident, had become totally disabled and that based on past union contracts, his loss of wages up to the time of trial was $140,082. The testimony by an economist, which was not refuted, was that the future loss of earnings to the end of his work expectancy (projecting an annual increase of 8%) would be an addi *123 tional $576,690. Discounted, the present value of the lost future earnings would be $364,789. Together with earnings lost to date and loss of Social Security benefits after retirement, the total, discounted to the present value, would be $567,000. That sum constitutes the gross amounts of wages and benefits before taxation. In a special verdict, that is precisely the amount the jury found to be the plaintiff’s gross amount of lost wages and benefits.
During the trial, defendants’ counsel had persisted in insisting that any amount of lost wages found by the jury would have to be reduced by the taxes plaintiff would have paid, on that income as it was earned, citing the 1980 decision of the United States Supreme Court in Norfolk & Western Ry. Co. v Liepelt (444 US 490). On the basis of that ruling, and the holding by the Appellate Division, First Department, in Gilliard v New York City Health & Hosps. Corp. (77 AD2d 532), the court, despite the prior longstanding rule that taxes were not to be considered, determined that it would have to preserve the question for review. Thus, in order to obviate the necessity for a third trial, the court permitted defendants’ counsel to question the economics expert as to whether his projection of future earnings included a calculation for income tax. The expert testified that taxes on the plaintiff’s past income would have been at an effective rate of approximately 8.9%, but that as inflation and future increases pushed the plaintiff in higher tax brackets his effective rate for the future would average about 15% of his earnings. While understandably professing difficulty in calculating the amount of future earnings less taxes, he stated that his “best guess” as to the total of taxes, after discount and after removing certain nontaxable items, would be $73,670.
At the conclusion of the trial, the court asked the jury to return a special verdict fixing responsibility and specifying their findings as to general damages and special damages, breaking the latter down into medical expenses and loss of wages and benefits. The jury was asked to find both the gross amount of lost wages, and the deduction which would have to be made if taxes were considered.
The jury answered the following questions:
*124 “Question: Was plaintiff injured as a result of the negligence of the defendants?
“Answer: Yes.
“Question: What damages, if any, do you award plaintiff for
“(A) Special damages
“(1) Medical expenses
$3,759.83
“(2) Loss of Wages — benefits
“(i) Gross
$567,000
“(ii) Less taxes
$75,750.00
“(B) General damages
$150,000.”
The total of general damages and special damages deducting taxes came to $645,009.83. If taxes are not to be deducted, the total of general and special damages is $720,759.83.
Plaintiff now moves, pursuant to CPLR 5016 (subd [b]) which provides, “if there is a special verdict, the court shall direct entry of an appropriate judgment”, to have the court enter judgment on the jury’s special verdict in the sum of $720,759.83 with interest from March 2, 1981. Prior to 1980, it had been the rule,, both in Federal and State courts, with few exceptions, that in considering the question of damages a jury was not to take future income taxes into account. (Coleman v New York City Tr. Auth., 37 NY2d 137; McWeeney v New York, New Haven & Hartford R.R. Co., 282 F2d 34.) In Coleman the jury had asked the Judge for an indication as to the taxability of the award to plaintiff. The Trial Judge responded (p 145): “Don’t concern yourselves with that. It forms no part of your deliberations. It is not an element to be concerned by you. Do not consider that at all.” The majority of the Court of Appeals held (p 145): “Although there is division on the question, the great weight of decisional authority in this country in respect to a case such as this, is to the effect that the Judge *125 was not required to charge the jury that any award to the plaintiff would be free of income tax”. One dissenter contended not that the jury should be charged to deduct income tax, but rather that they should be informed that any damages awarded were not taxable income.
The ruling in Coleman (supra), while affirming the charge as to taxes that the jury was “not to consider it at all” really dealt with the question of informing the jury as to the taxability of its award, and did not specifically deal with the question of whether that, award by the jury should reflect an adjusted amount for future income less future taxes.
McWeeney (supra) was a Federal Employer’s Liability Act (US Code, tit 45, § 51 et seq. [FELA]) case. The Trial Judge refused a request to charge as follows (p 35): “If your verdict is in favor of plaintiff, you must calculate any past or future loss of earnings on the basis of his net income after deduction of income taxes.” On appeal, Judge Friendly wrote that the proper measure of damages is gross income in the great mass of litigation involving lower or middle class plaintiffs, and he contended that putting the calculation of future income taxes before a jury was excessively speculative and problematical.
The decisions in Coleman (supra) and McWeeney (supra) were, until 1980, considered the prevailing rule throughout the United States. (Mitchell v Emblade, 80 Ariz 398; Seely v McEvers, 115 Ariz 171; Rodriguez v McDonnell Douglas Corp., 87 Cal App 3d 626; Hildyard v Western Fasteners, 33 Col App 396; High v State Highway Dept., 307 A2d 799 [Del]; Hall v Chicago & North Western Ry. Co., 5 Ill 2d 135; Highshew v Kushto, 235 Ind 505; Rediker v Chicago, Rock Is. & Pacific R.R. Co., 1 Kan App 2d 581, cert granted 435 US 922, cert dsmd 435 US 982; Louisville & Nashville R.R. Co. v Mattingly, 318 SW2d 844 [Ky]; Roundtree v Technical Welding & Fabrication Co., 364 So 2d 1325 [La]; Michaud v Steckino, 390 A2d 524, 535 [Me]; Lumber Terms. v Nowakowski, 36 Md App 82; Briggs v Chicago Great Western Ry. Co., 80 NW2d 625 [Minn]; Senter v Ferguson, 486 SW2d 644 [Mo]; McGee v Burlington Northern, 174 Mont 466; Bracy v Great Northern Ry. Co., 136 Mont 65; Coleman v New York City Tr. Auth., 37 *126 NY2d 137, supra; Ericksen v Boyer, 225 NW2d 66 [ND]; Smith v Pennsylvania R.R. Co., 47 Ohio Opns 49; Missouri-Kansas-Texas R.R. Co. v Miller, 486 P2d 630 [Okla]; Byre v Wieczorek, 88 SD 185; Norfolk So. Ry. Co. v Rayburn, 213 Va 812; Hardware Mut. Cas. Co. v Crow & Son, 6 Wis 2d 396; Draisma v United States, 492 F Supp 1317; Spinosa v International Harvester Co., 621 F2d 1154; Geris v Burlington Northern, 277 Ore 381; Hinzman v Palmanteer, 81 Wn 2d 327; Plourd v Southern Pacific Transp. Co., 266 Ore 666; also Dullard v Berkeley Assoc. Co., 606 F2d 890; Blake v Delaware & Hudson Ry. Co., 484 F2d 204; Varlack v SWC Caribbean, 550 F2d 171; Johnson v Penrod Drilling Co., 510 F2d 234, cert den 423 US 839; Felder v United States, 543 F2d 657.)
Only six jurisdictions permitted a reduction of recovery by the amount of taxes. (Floyd v Fruit Inds., 144 Conn 659; Feldman v Allegheny Airlines, 524 F2d 384; Runyon v District of Columbia, 463 F2d 1319; Adams v Deur, 173 NW2d 100 [Iowa]; Tenore v Nu Car Carriers, 67 NJ 466; Mosley v United States, 405 F Supp 357.) However, three of those jurisdictions have limited that ruling to wrongful death actions and permit a gross income recovery free of taxes in personal injury actions. (Gorham v Farmington Motor Inn, 159 Conn 576; Hooks v Washington Sheraton Corp., 578 F2d 313; St. Johns Riv. Term. Co. v Vaden, 190 So 2d 40 [Fla].) There appear to be no jurisdictions which have expressly held that net income after taxes is to be the basis of recovery in personal injury cases.
The “settled law” was unsettled to some degree by the rulings in Liepelt (444 US 490, supra) and Gilliard (77 AD2d 532, supra) in 1980. Liepelt was a death action brought under the FELA. Despite the fact that plaintiffs’ economist assessed pecuniary damages at $302,000, the jury awarded plaintiffs $775,000. The Supreme Court surmised that the jury, incorrectly assuming the award was subject to taxation, may have attempted to inflate the award to provide for taxes. Since in a wrongful death action under the FELA, the measure of recovery is “deprivation of the pecuniary benefits which the beneficiary might have reasonably received”, the court felt that the only realistic measure of what the deceased wage earner *127 contributed was his after tax income. The court’s holding was expressly limited to FELA cases. In Gilliard, the Appellate Division in a 3-2 memorandum decision, adverted to the fact that by statute damages in wrongful death cases are limited to pecuniary injury. In calculating what the decedent might have contributed during the remainder of his work life, the majority noted (p 533) that out of his earnings “income and Social Security taxes would have to be paid, pension payments and other normal payroll deductions made, and living' expenses, such as clothing, carfare, luncheon expenses and room rent, however minimal, incurred.” It does not appear that the Appellate Division, in this offhanded manner, would attempt to change a long-standing rule of such sweeping impact. All they were doing was applying the well-understood rule that wrongful death recoveries would be limited only to that portion of the decedent’s income that might be expected to have been contributed to the beneficiaries.
Indeed, the post-Liepelt (supra) and Gilliard (supra) decisions bear out plaintiff’s contention that the law with respect to personal injury recovery based on loss of gross income remains the rule. Two decisions which were handed down subsequent to this court’s permitting the jury to calculate prospective income tax on future earnings reaffirmed that such a calculation and deduction is improper.
The first of these is Vasina v Grumman Corp. (492 F Supp 943, affd 644 F2d 112, 118). In that case (pp 944-945) the Trial Judge refused to give an instruction which would include a consideration of taxes and stated explicitly that “New York law does not consider income taxes in computing damages.” The Court of Appeals for the Second Circuit held that despite Liepelt (supra) and Gilliard (supra), the Trial Judge was correct in excluding income taxes from the jury’s consideration. The Circuit Court saw no basis for any suggestion that the New York Court of Appeals would embrace Liepelt today and apply it to all personal injury cases.
On the State level, the Appellate Division of the Second Department held in Sullivan v Held (81 AD2d 663, 665) that “insistence that income tax should have been considered by the jury” in calculating loss of earnings would be *128 error. If there ever was any doubt about the sweep of the rule as to the exclusion of taxes enunciated in Coleman (37 NY2d 137, supra), the Sullivan case has dispelled it.
In another post-Liepelt case, Draisma v United States (492 F Supp 1317) an action brought under the Federal Tort Claims Act (US Code, tit 28, § 2671 et seq.) the court held that Liepelt (supra) was not controlling in a case where the calculation of damages proceeds pursuant to State law. In Croce v Bromley Corp. (623 F2d 1084, a death action arising from an airplane crash), the court refused to apply the Liepelt ruling on taxes, holding that in that death action, under Louisiana law, the recovery of gross iincome was proper. Spinosa v International Harvester Co. (621 F2d 1154, 1158, supra), a diversity case applying the laws of New Hampshire, held that Liepelt did not apply and “does not mandate an across-the-board change in the majority rule regarding computation of a decedent’s projected future earnings.”
This court is persuaded not only by the line of authoritative decisions, but also by the logic of the situation, that a deduction of income taxes from future earnings is not called for in a personal injury case applying State law. While this case may be premised upon the 1972 Longshoremen’s and Harbor Workers’ Compensation Act (US Code, tit 33, § 901 et seq.) the controlling law as to damages is nevertheless the law of the State. In effect, Congress directed the courts dealing with such liability cases to look, not to the sea, but to the land. In Barulic v French Line (75 AD2d 761) the Appellate Division declared: “Under the 1972 amendments, both State and Federal courts are directed to look to land based common law for standards from which to build a national uniform law of negligence applicable to longshoremen’s suits against shipowners.”
Plaintiff persuasively argues that it was the intent of Congress to permit recoveries of damages in. lieu of lost earnings without regard to Federal taxes. Section 104 (subd [a], par [2]) of title 26 of the United States Code provides that “the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness” is not subject to Federal tax. This appears to be a clear intent on the part of Congress to *129 confer a benefit upon an injured party. by making his recovery tax free, unlike a recovery judgment in a commercial case which constitutes taxable income. (Raytheon Prod. Corp. v Commissioner of Internal Revenue (144 F2d 110, cert den 323 US 779.) If the United States Government is willing to forego taxes which might otherwise have become due on earnings or its equivalent, there appears to be no persuasive reason why a tort-feasor, rather than a tort-victim, should gain the benefit of the tax forgiveness. (See Gorham v Farmington Motor Inn, 159 Conn 576; St. Johns Riv. Term. Co. v Vaden, 190 So 2d 40, 42 [Fla]) “[I]f the jury were to mitigate the damages of the plaintiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give an injured party a tax benefit would be nullified.” (Hall v Chicago & North Western Ry. Co., 5 Ill 2d 135, 152; accord Rediker v Chicago, Rock Is. & Pacific R. R. Co., 1 Kan App 2d 581, supra.) “The tax exemption was intended by Congress to benefit the injured party, not the wrongdoer” (Ericksen v Boyer, 225 NW2d 66, 73-74 [ND]; see, generally, Damages-Considering Income Taxes, Ann., 63 ALR2d 1393.) The fact that the Congress may have forgiven tax indebtedness of an injured party is of no concern to the tortfeasor. Such a benefit is tantamount to a recovery from a collateral source.
A great deal has been said about the speculative nature of calculating taxes in the future when we do not know what economic or political policies might prevail which profoundly affect tax rates. Nevertheless, the United States Supreme Court in Liepelt (444 US 490, supra) dismissed that difficulty as not insuperable, and indeed, in this case, the economic expert was able, through some oversimplification to be sure to calculate what future taxes might be. There is a problem, however, in calling for a deduction on income taxes from the award for future earnings since any recovery, even if reduced by hypothetical future taxes, must then be invested and the annual income thereon would again be subject to income taxes. Judge • Friendly in the McWeeney (282 F2d 34, 37, supra) case, concluded, “Therefore, if the court is going to use income after taxes as a measure of plaintiff’s loss, it must add back *130 the taxes which would be due on the interest earned else the award would not fully compensate for the loss.”
Another problem which arises when a jury is directed to deduct income taxes on future earnings is that the plaintiff does not, in fact, receive the full recovery for his lost future earnings since a substantial portion of that goes to compensate the attorney for his contingent fee. Thus, the plaintiff who is awarded $300,000 for lost wages will actually pocket $200,000 (on which he pays taxes on the annual income from that invested sum) while being compelled to take a deduction for income that goes into the attorney’s pocket rather than his own. A policy which would require a jury to consider such future tax would therefore impact unfairly upon the injured party.
Since both law and logic call for this court to reiterate the proposition that a jury is not to consider a deduction for future income taxes for lost earnings, this court will grant the plaintiff’s motion and upon the special verdict of the jury, will direct the entry of judgment in the sum of $720,759.83 with interest from March 2, 1981.