(No. 59486

GAYLEN W. KLAWONN, Adm'r, Appellee, v. RICKEY J. MITCHELL *et al.* (Hidden Lake Management Corporation, Appellant).

*Opinion filed February 22, 1985.—Rehearing denied March 29, 1985.*

RYAN and MORAN, JJ., dissenting.

Bozeman, Neighbour, Patton & Noe, of Moline (John V. Patton and Max D. Cartwright, of counsel), for appellant.

Ruud & Scovil, of Rock Island (Glenn F. Ruud, of counsel), for appellee.

John Palmer, of Chicago (Francis D. Morrissey, of Baker & McKenzie, of counsel), for *amicus curiae* Atchison, Topeka & Santa Fe Railway Company.

Kenneth J. Wysoglad, of Chicago (Francis D. Morrissey, of Baker & McKenzie, of counsel), for *amicus curiae* Burlington Northern Railroad Company.

Thomas L. Samuel, of Cleveland, Ohio (Francis D. Morrissey, of Baker & McKenzie, of Chicago, of counsel), for *amicus curiae* Chessie System Railroads.

Edward M. O'Donnell, of Chicago (Francis D. Morrissey, of Baker & McKenzie, of counsel), for *amicus curiae* Chicago, Milwaukee, St. Paul & Pacific Railroad Company.

Ronald J. Cuchna, of Chicago (Francis D. Morrissey, of Baker & McKenzie, of counsel), for *amicus curiae* Chicago & North Western Transportation Company.

Thomas J. Healey, of Chicago (Francis D. Morrissey, of Baker & McKenzie, of counsel), for *amicus curiae* Illi-

nois Central Gulf Railroad.

Stuart Symington, Jr., of St. Louis, Missouri (Francis D. Morrissey, of Baker & McKenzie, of Chicago, of counsel), for *amicus curiae* Missouri Pacific Railroad Company.

Wiley F. Mitchell, Jr., of St. Louis, Missouri (Francis D. Morrissey, of Baker & McKenzie, of Chicago, of counsel), for *amicus curiae* Norfolk Southern Corporation.

JUSTICE GOLDENHERSH delivered the opinion of the court:

On October 14, 1978, the members of the Sitzmacher Ski Club, Inc., embarked upon a hayrack ride conducted by the Hidden Lake Management Corporation, hereafter defendant. Because of a flat tire on one of the wagons, three wagons pulled onto the shoulder of the road. A number of the riders left the wagons, and as the result of being struck by an automobile driven by Rickey J. Mitchell, three of them were killed and two were injured. Actions filed against Mitchell, defendant, and the Sitzmacher Ski Club, Inc., in the circuit court of Rock Island County by the administrators of the estates of the decedents pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1977, ch. 70, par. 2), and by the injured individuals, were consolidated for trial.

During the conference on jury instructions, defendant tendered, and the court, over the plaintiffs' objections, gave the following instruction:

> "If you award damages to any plaintiff in this case, you are instructed that any such award as you may make is not subject to federal or state income taxes."

In all five cases the jury returned verdicts against defendant and Mitchell and in favor of the ski club. This appeal involves only the wrongful death action filed by plaintiff Gaylen W. Klawonn as administrator of the es-

tate of his deceased wife, Connie L. Klawonn. The jury found damages to be $81,906.12 and that decedent was 50% negligent. The circuit court entered judgment against defendant and Mitchell in the amount of $40,953.06.

Plaintiff's post-trial motion sought a new trial and contended, *inter alia*, that the court erred in instructing the jury that any award was not subject to taxation. The court vacated the judgment and ordered a new trial solely because of its determination that it had erred in instructing the jury as to the nontaxable nature of its award. All other grounds asserted in the motion were overruled.

Defendant sought leave to appeal from the order granting a new trial. (87 Ill. 2d R. 306(a)(1).) The appellate court denied the petition, and we allowed defendant's petition for leave to appeal (87 Ill. 2d R. 315(a)).

There can be no dispute that under present law compensatory damage awards are tax exempt. The Internal Revenue Code specifically exempts from the definition of gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." (26 U.S.C. sec. 104(a)(2) (1982); as to Illinois income tax see Ill. Rev. Stat. 1981, ch. 120, pars. 2–201 through 2–203(e).) This exemption applies even though such damages often include compensation for loss of past and estimated future earnings which would have been taxable had plaintiff not been injured. The section applies not only in the personal injury context but also to wrongful death awards. See *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755.

Although the nontaxable nature of compensatory damage awards is clear, this court has previously noted the inadvisability of instructing or otherwise informing

the jury of this fact. *Hall v. Chicago & North Western Ry. Co.* (1955), 5 Ill. 2d 135, involved an action under the Federal Employers' Liability Act (45 U.S.C. sec. 51 *et seq.* (1946)) for personal injuries sustained by the plaintiff while employed by the defendant railroad. During closing argument defense counsel advised the jurors that, if they found for the plaintiff, "whatever amount he receives by way of verdict in this case is not subject to Federal income tax." (*Hall v. Chicago & North Western Ry. Co.* (1955), 5 Ill. 2d 135, 149.) Upon objection by the plaintiff, this remark was stricken, but the circuit court nevertheless granted plaintiff a new trial. In affirming the new trial order, this court relied upon the fact that the jury had been generally instructed on the proper measure of damages and it was therefore no more appropriate to include specific reference to the issue of taxes than to innumerable similar factors. (5 Ill. 2d 135, 150-51.) Further, this court indicated that it believed the determination not to tax compensatory damage awards was intended by Congress to give the injured party a tax benefit. The court ultimately determined that "the incident of taxation is not a proper factor for a jury's consideration, imparted either by oral argument or written instruction. It introduces an extraneous subject, giving rise to conjecture and speculation." 5 Ill. 2d 135, 152.

When presented in *Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, *cert. denied* (1972), 409 U.S. 983, 34 L. Ed. 2d 247, 93 S. Ct. 322, an action also brought under the Federal Employers' Liability Act, in the context of a jury instruction rather than argument of counsel, the court relied upon *Hall* to hold that the circuit court had correctly refused to instruct the jury that any award in favor of the plaintiff would not be subject to income tax. (51 Ill. 2d 428, 430.) Relying on *Hall* and *Raines,* our appellate court decisions consistently pre-

cluded evidence or instructions concerning income tax in personal injury and wrongful death actions brought pursuant to State law.

In 1980, however, the Supreme Court ruled, in a wrongful death action arising under the Federal Employers' Liability Act, that evidence of income taxes payable on the decedent's past and future earnings was admissible and held it to be error to refuse to instruct the jury that an award of damages would be tax free, thereby overruling *Hall* and *Raines. Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755.

In *Liepelt*, the Supreme Court noted that, in a wrongful death action under the FELA, the measure of recovery is those damages that flow from the deprivation of the pecuniary benefits which the beneficiaries might reasonably have received. It reasoned that it is the wage earner's "after-tax income, rather than his gross income before taxes, that provides the only realistic measure of his ability to support his family. It follows inexorably that the wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies." (444 U.S. 490, 493-94, 62 L. Ed. 2d 689, 693-94, 100 S. Ct. 755, 757.) The court recognized that there are many variables which may affect a wage earner's future income tax liability but saw no greater difficulty in their handling than in the solution of other similar problems, such as the amount of a decedent's expected expenditures. It rejected the contention that evidence describing a decedent's estimated after-tax earnings was too speculative or complex for a jury's consideration. (444 U.S. 490, 494, 62 L. Ed. 2d 689, 694, 100 S. Ct. 755, 757-58.) It rejected, too, the theory upon which *Hall* had, in part, relied, that the award exemption was intended by Congress as a tax benefit to the victim.

The Supreme Court emphasized that tax-conscious jurors may mistakenly assume that a plaintiff's recovery will be subject to Federal taxation and therefore substantially increase an award to insure that he is fully compensated, thus awarding an amount improperly inflated beyond the earnings which the injured plaintiff would have received or the decedent would have provided. In concluding to eliminate this potential windfall, the Supreme Court quoted language used by the United States Court of Appeals for the Ninth Circuit in *Burlington Northern, Inc. v. Boxberger* (9th Cir. 1975), 529 F.2d 284, 297:

> " '[t]o put the matter simply, giving the instruction can do no harm, and it can certainly help by preventing the jury from inflating the award and thus overcompensating the plaintiff on the basis of an erroneous assumption that the judgment will be taxable.' " *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 498, 62 L. Ed. 2d 689, 696, 100 S. Ct. 755, 759.

Accordingly, the court held that it was error to refuse to instruct the jury that "your award will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award." (444 U.S. 490, 492, 62 L. Ed. 2d 689, 693, 100 S. Ct. 755, 757.) The court determined that such an instruction "would not be prejudicial to either party, but would merely eliminate an area of doubt or speculation that might have an improper impact on the computation on the amount of damages." 444 U.S. 490, 498, 62 L. Ed. 2d 689, 696, 100 S. Ct. 755, 759-60.

Although *Liepelt* has established that in FELA actions juries, upon request, must be instructed that any damages awarded are not subject to taxation, this case involves purely State law, and *Liepelt* is not directly controlling. See, *e.g., Hansen v. Johns-Manville Products Corp.* (5th Cir. 1984), 734 F.2d 1036, 1045.

We have thoroughly reviewed the law of the other States concerning whether and in what manner income tax consequences are to be taken into account in awarding compensatory damages. The decisions present a variety both of holdings and the reasons upon which they are based. (See generally Annot. 16 A.L.R.4th 589 (1982 & 1984 Supp.).) A detailed analysis of those opinions, their rationale, and the numerous commentaries concerning them would unduly extend the length of this opinion and contribute little to the decision we are required to make.

The decision in *Liepelt* is based, not on evidence, but on the conjecture that "[a]lthough the law is perfectly clear, it is entirely possible that the members of the jury may assume that a plaintiff's recovery in a case of this kind will be subject to federal taxation, and that the award should be increased substantially in order to be sure that the injured party is fully compensated." (*Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 496, 62 L. Ed. 2d 689, 695, 100 S. Ct. 755, 759.) After discussing the evidence of pecuniary loss the court said, "It is surely not fanciful to suppose that the jury erroneously believed that a large portion of the award would be payable to the Federal Government in taxes and that therefore it improperly inflated the recovery." 444 U.S. 490, 497, 62 L. Ed. 2d 689, 696, 100 S. Ct. 755, 759.

We agree with the rationale of the dissenting opinion that "[t]here certainly is no evidence in this record to indicate that the jury is any more likely to act upon an erroneous assumption about an award's being subject to federal income tax than about any other collateral matter." (444 U.S. 490, 503, 62 L. Ed. 2d 689, 699, 100 S. Ct. 755, 762.) As Mr. Justice Blackmun pointed out:

> "It also is 'entirely possible' that the jury 'may' increase its damages award in the belief that the defendant is insured, or that the plaintiff will be obligated for sub-

stantial attorney's fees, or that the award is subject to state (as well as federal) income tax, or on the basis of any number of other extraneous factors. Charging the jury about every conceivable matter as to which it should not misbehave or miscalculate would be burdensome and could be confusing." (444 U.S. 490, 503, 62 L. Ed. 2d 689, 699, 100 S. Ct. 755, 762.)

In our opinion proof of pecuniary loss, not simple under the best of circumstances, should not be rendered more complex by injecting the question of income tax or other extraneous factors.

Defendant, and several railroads as *amici curiae*, argue that refusal of income tax instructions violates both the United States and Illinois constitutions for the reason that non-FELA defendants are deprived of equal protection and due process. We do not agree. Actions brought under the Federal Employers' Liability Act are, of course, based on Federal law, and Federal law applies even though the matter is litigated in a State court. The fact that the State, in litigation based solely on State law, follows a procedure different than that applicable under Federal law does not serve to deprive a non-FELA defendant of equal protection or due process.

For the reasons stated, the order granting plaintiff's motion for new trial is affirmed.

*Judgment affirmed.*

JUSTICE RYAN, dissenting:

The opinion in this case creates an absurdity in the law which I am sure will cause the public to figuratively shake its head in bewilderment and to express disgust with the courts and the legal profession. If a person is injured in an accident involving the Federal Employers' Liability Act, a jury must be told that the award is not subject to Federal income tax, whereas if the same person is injured in an accident covered by State law, a jury

cannot be told that the award is not subject to the tax. The tax consequences are exactly the same in both situations. So, as a layman, Mr. Lawyer, I would ask you, please explain the reason for the difference in the treatment of these two claims. As a lawyer, Mr. Layman, I can only answer it is so because the Illinois Supreme Court said it is so.

We may not agree with the holding of the United States Supreme Court in *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755, but it is the law which must be followed in FELA cases whether tried in a Federal or a State court. We may prefer Justice Blackmun's reasoning as stated in his dissent, quoted in the majority opinion, but that is not the law which must be followed. Further, in *Gulf Offshore Co. v. Mobil Oil Corp.* (1981), 453 U.S. 473, 486-87, 69 L. Ed. 2d 784, 796-97, 101 S. Ct. 2870, 2879-80, the Supreme Court noted that it had not limited the holding in *Liepelt* to FELA cases, but had articulated in that case a Federal common law rule applicable to all Federal claims. So as the law now stands in Illinois, if a Federal claim is being tried in the State court, evidence of the tax consequences may be introduced and the jury must be instructed that any award is not subject to Federal income tax, whereas if the claim being tried arises under State law, the jury may not be so instructed. If a case involves both a claim arising under Federal law and one arising under State law, the trial judge has the dubious pleasure of trying to rationally instruct the jury that as to the Federal claim, and the Federal claim only, the award is not subject to income tax. I can clearly visualize the look of bewilderment on the faces of the jurors.

I have reviewed the laws of the other States concerning whether and in what manner income tax consequences should be taken into account in awarding compensatory damages. It is an understatement to say that

the decisions vary widely. (See generally Annot. 16 A.L.R.4th 589 (1982 & 1984 Supp.).) Some States have excluded all evidence regarding income taxes and prohibited all mention thereof in both argument and jury instructions. (See, *e.g., Richardson v. LaBuz* (1984), 81 Pa. Commw. 436, 459-61, 474 A.2d 1181, 1196-97; *Dehn v. Prouty* (S.D. 1982), 321 N.W.2d 534, 538-39.) Other courts have drawn a distinction between the specific types of damages involved. For example, income taxes which would have been paid upon awards for past wages are readily ascertainable and are to be deducted from the lost gross earnings, while gross future earnings are recoverable without tax reductions because future tax rates, exemptions, deductions and related questions are deemed too speculative. (See, *e.g., Yukon Equipment, Inc. v. Gordon* (Alaska 1983), 660 P.2d 428, 433-35.) Other courts have distinguished between personal injury actions and wrongful death actions, reducing the amount of recovery by the amount of taxes in wrongful death actions, while permitting a gross income recovery in personal injury actions. (See generally *Louissaint v. Hudson Waterways Corp.* (1981), 111 Misc. 2d 122, 126-27, 443 N.Y.S.2d 678, 680-81, and cases there cited. See also *In re Air Crash Disaster Near Chicago, Illinois on May 20, 1979* (7th Cir. 1983), 701 F.2d 1189, 1195-96.) At least one court has specifically determined that evidence of tax consequences should be excluded but that the jury should be instructed that any award will not be subject to taxes. (*Domeracki v. Humble Oil & Refining Co.* (3d Cir. 1971), 443 F.2d 1245, *cert. denied* (1971), 404 U.S. 883, 30 L. Ed. 2d 165, 92 S. Ct. 212.) Even before *Liepelt,* several jurisdictions permitted some consideration of the tax consequences in calculating damages. See, *e.g., Mosley v. United States* (4th Cir. 1976), 538 F.2d 555, 558-59 (applying North Carolina law); *Tenore v. Nu Car Carriers, Inc.* (1975), 67 N.J. 466, 484-95, 341

.

A.2d 613, 623-29; *Turcotte v. Ford Motor Co.* (1st Cir. 1974), 494 F.2d 173, 184-86 (applying Rhode Island law); *Runyon v. District of Columbia* (D.C. Cir. 1972), 463 F.2d 1319, 1322 (applying District of Columbia law); *Abele v. Massi* (Del. 1970), 273 A.2d 260, 260-61; *Adams v. Deur* (Iowa 1969), 173 N.W.2d 100, 105-06; *Floyd v. Fruit Industries, Inc.* (1957), 144 Conn. 659, 671-73, 136 A.2d 918, 925-26; *Dempsey v. Thompson* (1952), 363 Mo. 339, 344-46, 251 S.W.2d 42, 44-45.

A clear majority of commentators favor the jury's consideration of income tax consequences in determining the amount of compensatory damages, either by the introduction of appropriate evidence, an appropriate instruction, or both. See, *e.g.*, D. Dobbs, Remedies sec. 8.8 (1973); 2 F. Harper & F. James, Torts sec. 25.12 (1956); Elligett, *Income Tax Considerations in Florida Personal Injury Actions*, 36 U. Miami L. Rev. 643 (1982); Dennis, Sirmon & Drinkwater, *Wrongful Death Damages—Fair Compensation for Future Pecuniary Loss Requires Consideration of Economic Trends and Income Tax Consequences*, 47 Miss. L.J. 173 (1976); Feldman, *Personal Injury Awards: Should Tax-Exempt Status Be Ignored?*, 7 Ariz. L. Rev. 272 (1966); Burns, *A Compensation Award for Personal Injury or Wrongful Death Is Tax-Exempt: Should We Tell the Jury?*, 14 DePaul L. Rev. 320 (1965); Nordstrom, *Income Taxes and Personal Injury Awards,* 19 Ohio St. L.J. 212 (1958); Comment, 38 Wash. & Lee L. Rev. 289 (1981); Note, 33 Ohio St. L.J. 972 (1972); Note, 50 Ky. L.J. 601 (1962); Comment, 26 Ford L. Rev. 98 (1957); Note, 4 U.C.L.A. L. Rev. 636 (1957); Note, 44 Ky. L.J. 384 (1956); Note, 9 Vand. L. Rev. 543 (1956); Comment, 11 Wash. & Lee L. Rev. 66 (1954); Note, 42 Geo. L.J. 149 (1953); Note, 32 Tex. L. Rev. 108 (1953); *Contra,* Franz, *Should Income Taxes Be Included When Calculating Lost Earnings?*, 18 Trial 53 (Oct. 1982); Kennelly, *The Effect of Income Taxes Upon Earnings in*

*Wrongful Death and Permanent Disability Cases—An Update,* 25 Trial Law. Guide 77 (1981); Note, 1983 B.Y.U. L. Rev. 159 (1983); Note, 35 N. Car. L. Rev. 401 (1957); Comment, 42 Iowa L. Rev. 134 (1956); Note, 8 Ark. L. Rev. 174 (1953); Comment, 33 B.U. L. Rev. 114 (1953).

There is nothing we can do about the law as announced in *Liepelt.* That decision must be followed in all cases involving Federal claims tried in State courts. The law would look a little less absurd to the man on the street if the same rule of law were applied to claims arising under State law.

I therefore respectfully dissent.

JUSTICE MORAN joins in this dissent.