MORGAN GUARANTY TRUST COMPA-
NY OF NEW YORK, as Executor Un-
der the Will of Charles F. Fogarty, De-
ceased, Plaintiff,

v.

TEXASGULF AVIATION,
INC., Defendant.

MORGAN GUARANTY TRUST COMPA-
NY OF NEW YORK, as Executor Un-
der the Will of Charles F. Fogarty, De-
ceased, Plaintiff,

v.

The GARRETT CORPORATION, Colt
Electronics Co., Inc., Phoenix Aero-
space, Inc., and Lockheed Corp., De-
fendants.

Nos. 82 Civ. 3640 (GLG), 82 Civ.
0816 (GLG).

United States District Court,
S.D. New York.

March 14, 1985.

Kreindler & Kreindler, New York City,
for plaintiff; Milton G. Sincoff, New York
City, of counsel.

Townley & Updike, New York City, for
defendant Texasgulf Aviation; Frederick
D. Berkon, New York City, of counsel.

Haight, Gardner, Poor & Havens, New
York City, for The Garrett Corp.; Randal
R. Craft, Jr., Gary D. Way, New York City,
of counsel.

## MEMORANDUM DECISION

GOETTEL, District Judge:

At an earlier trial on liability only, the
jury found the defendants, Texasgulf Avia-
tion, Inc., The Garrett Corporation, Colt
Electronics Co., Inc., and Phoenix Aero-
space, Inc., liable for the wrongful death of
the decedent, Dr. Fogarty. Before the up-
coming damage trial, the plaintiff, Morgan
Guaranty Trust Company of New York
("Morgan"), executor of Fogarty's estate,
moves *in limine* for an order to prohibit
the defendants from introducing evidence
as to the effect of future income tax liabili-
ty on the decedent's future earnings. For

the reasons stated below, we deny the plaintiff's motion.

The issue before us is whether we should admit evidence that demonstrates the effect of income taxes on the decedent's estimated future earnings for the purpose of calculating the damage award for a wrongful death. In the instant case, such a demonstration could reduce the decedent's future earnings, and hence the plaintiff's recovery, by approximately $5,000,000.

The Court has jurisdiction over this action based upon diversity of citizenship. As we have earlier determined, New York State law applies. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since the New York Court of Appeals has not ruled on this precise issue, the Court must evaluate how New York's highest tribunal would decide the question. For a general discussion on ascertaining state law, see 1A J. Moore, W. Taggart, A. Vestal & J. Wicker, *Moore's Federal Practice* ¶ 0.307[1], [2] (2d ed. 1983).

■ In New York, section 5–4.3 of the Estate, Powers and Trusts Law governs the calculation of damages in a wrongful death action. N.Y.Est. Powers & Trusts § 5–4.3 (McKinney Supp.1984). The damages awarded should be the "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought." *Id.* The amount of "fair and just compensation" is strictly a factual determination and should be decided on a case-by-case basis. *Rogow v. United States,* 173 F.Supp. 547 (S.D.N.Y.1959).

The New York courts have not established a steadfast formula to calculate the proper compensation awarded under section 5–4.3. The courts have, however, enumerated several factors to consider. These factors include: the decedent's age; his health; his expectations; his earning ability; his income; the possibility of additional income; and the number, age, and situation of those dependent upon the decedent for support, and the manner in which he would have supported them. *Dimitroff v. State,*

171 Misc. 635, 637, 13 N.Y.S.2d 458 (N.Y. Ct.Cl.1939). *See also Tucker v. City of New York,* 54 A.D.2d 930, 931, 388 N.Y. S.2d 133, 134 (2d Dep't 1976); *Brooks v. Siegel,* 52 A.D.2d 1003, 383 N.Y.S.2d 439, 440 (3d Dep't 1976); *Tenczar v. Milligan,* 47 A.D.2d 773, 774–75, 365 N.Y.S.2d 272, 275 (3d Dep't 1975); *Ritter v. State,* 74 Misc.2d 80, 91–92, 344 N.Y.S.2d 257, 269–70 (N.Y.Ct.Cl.1972). In summary, the amount of pecuniary damages is based on " 'the reasonable expectancy, or lack of it, of future assistance or support,' to the survivors if decedent's life had continued." *In re Pridell's Estate,* 206 Misc. 316, 319, 133 N.Y.S.2d 203, 207 (Surr.Ct.1954) (quoting *Loetsch v. New York City Omnibus Corp.,* 291 N.Y. 308, 310, 52 N.E.2d 448, 449 (1943)).

■ One of the prime considerations in this formula is the amount that the decedent customarily contributes to his dependents. *Id.* Clearly the amount of monetary support that a wage earner contributes to his family is affected by the income taxes he must pay. After-tax income, as opposed to pre-tax income, yields the only realistic estimate of the decedent's ability to support his family. Thus, the wage earner's future income tax liability is an essential component in calculating the financial deprivation incurred by his dependents upon his demise.

This conclusion is buttressed by the decision in *Gilliard v. New York City Health and Hospitals Corp.,* 77 A.D.2d 532, 430 N.Y.S.2d 308 (1st Dep't 1980). When calculating the amount that the decedent might have contributed during the remainder of his work life, the *Gilliard* court recognized that out of his wages "income and social security taxes would have to be paid, pension payments and other normal payroll deductions made, and living expenses, such as clothing, carfare, luncheon expense and room rent, however minimal, incurred." *Id.* 430 N.Y.S.2d at 309. Thus, the *Gilliard* court applied the principle that recoveries for wrongful death should be strictly limited to that portion of the decedent's income which would have been contributed

to support his dependents. *Louissaint v. Hudson Waterways Corp.*, 111 Misc.2d 122, 127, 443 N.Y.S.2d 678, 681 (N.Y.Sup. Ct.1981).

Morgan contends that New York is among the jurisdictions that adhere to the principle that lost earning damages are computed on a gross, pre-tax basis. In support of this contention, Morgan cites three personal injuries cases: *Sullivan v. Held*, 81 A.D.2d 663, 438 N.Y.S.2d 359 (2d Dep't 1981); *Louissant v. Hudson Waterways Corp.*, *supra*, 443 N.Y.S.2d 678; *Coleman v. New York City Transit Authority*, 37 N.Y.2d 137, 332 N.E.2d 850, 371 N.Y.S.2d 663 (1975). However, we are dealing with wrongful death recoveries under section 5–4.3. The considerations that are involved in the calculation of damages for a wrongful death are different from those for personal injury awards. This Court's holding does not encroach upon the area of personal injury awards since these awards do not fall within the scope of New York's wrongful death statute. Thus, our decision should be construed narrowly as applying only to wrongful death recoveries. *Cf. Louissaint v. Hudson Waterways Corp.*, *supra*, 443 N.Y.S.2d at 681 (construing *Gilliard* as applying only to wrongful death recoveries).

Morgan's argument is also based on the erroneous belief that *Coleman v. New York City Transit Authority*, *supra*, 371 N.Y.S.2d 663, 332 N.E.2d 850, is the leading New York Court of Appeals decision addressing the admission of evidence demonstrating income tax liability on future earnings. *Coleman* is inapposite. That case dealt with whether or not a judge should charge the jury that any final award to the plaintiff would be free of income taxes.[1] This issue is not before us; rather, we are deciding whether evidence of in-

come tax liability should be considered in *calculating* the plaintiff's final award.

*Coleman* held that a judge need not charge the jury that its award to the plaintiff would be free from income taxes. This holding is consistent with the concern that, by charging the jury as to the taxability of its award, the judge would be calling "a basically irrelevant factor to the jury's attention." *Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 502, 100 S.Ct. 755, 762, 62 L.Ed.2d 689 (1980) (Blackmun, J., dissenting). Decisions consistent with *Coleman* recognize that a jury might exaggerate its award for reasons not presented at trial. *See Blake v. Delaware & Hudson Railway Co.*, 484 F.2d 204 (2d Cir.1973); *Sullivan v. Held*, *supra*, 438 N.Y.S.2d at 361. Examples of such considerations falling outside the scope of the trial are the defendant's insurance coverage, attorney's fees, and as in *Coleman*, taxability of the final award. *Norfolk & Western Railway Co. v. Liepelt*, *supra*, 444 U.S. at 504, 100 S.Ct. at 762 (Blackmun, J., dissenting). The courts are skeptical of burdening and confusing the jury with every extraneous factor as to which it should not overload the damages. *Id.* This precautionary measure is valid when the contigencies lack any genuine connection to the outcome of the case, but this is not the situation here. This Court is addressing an evidentiary question deeply affecting the accurate calculation of the loss of support incurred by the dependents. The consideration of income tax liability on Dr. Fogarty's future earnings is a highly relevant factor under section 5–4.3. Any confusion that might be placed upon the jury, through the admission of income tax evidence, is outweighed by the fact that there may be an approximately $5,000,000 gap between decedent's

---

**1.** Section 104(a)(2) of the Internal Revenue Code excludes the amount of any damage award for personal injuries from taxable income. 26 U.S.C. § 104(a)(2) (1982). Section 104(a)(2) is also interpreted to exclude wrongful death awards from taxable income. Rev.Rul. 54–19, 1954–1 C.B. 179. Our decision is consistent with the intent of the legislative benefit behind section 104(a)(2). The final award that the

plaintiff will recover is still free from income taxes. We are not altering this grant, but we are allowing the consideration of the impact of future income taxes in order to accurately calculate the dependent's loss of support. To disallow such evidence and also exclude the final award from taxable income, would unjustly confer a double windfall upon the beneficiaries beyond the intent of section 104(a)(2).

future pre-tax and after-tax incomes. We are not dealing with factors foreign to the trial, as did *Coleman.* Our concern is with evidence necessary to determine the proper amount of damages mandated by New York's wrongful death statute.

Morgan also cites *Vasina v. Grumman Corp.,* 644 F.2d 112 (2d Cir.1981), in support of its argument that evidence demonstrating decedent's future income tax liability should be excluded under New York law. In denying the admission of income tax evidence, the *Vasina* court also relied upon *Coleman, supra,* 371 N.Y.S.2d 663, 332 N.E.2d 850, as the leading New York Court of Appeals decision. As stated above, *Coleman* did not address the tax issue involved in the instant action. Thus, the *Vasina* decision should not act as a deterrent to admitting evidence that demonstrates the impact of income taxes on the decedent's future earnings.

In *Shu-Tao Lin v. McDonnell Douglas Corp.,* 574 F.Supp. 1407, 1415 (S.D.N.Y. 1983), *aff'd in part, rev'd in part,* 742 F.2d 45 (2d Cir.1984), the district court allowed the introduction of income tax evidence. However, the court denied this ruling any practical effect. It offset the future tax liability with the consideration that the income stream produced by the damages award would be subject to taxes in subsequent years. The court of appeals found the district court's offsetting procedure to be erroneous. But they declined to rule on how the New York Court of Appeals would view the admission of income tax evidence on future earnings in wrongful death actions. Thus, the door was left open for our decision in the case at bar.

■ We have given much thought to the contention that future estimations of tax consequences are too speculative and intricate for a jury's consideration. In *Norfolk & Western Railway Co. v. Liepelt, supra,* 444 U.S. 490, 100 S.Ct. 755, the Supreme Court addressed the same problem when it allowed the jury to receive evidence demonstrating future income taxes in a wrongful death action arising under the Federal Employers' Liability Act. Although *Liepelt* is not controlling law in the New York state courts, we find the majority's analysis resolving the issue of the speculative nature of predicting future income taxes as most compelling:

> Admittedly there are many variables that may affect the amount of the wage earner's future income-tax liability. The law may change, his family may increase or decrease in size, his spouse's earnings may affect his tax bracket, and extra income or unforeseen deductions may become available. But future employment itself, future health, future personal expenditures, future interest rates, and future inflation are also matters of estimate and prediction. Anyone of these issues might provide the basis for protracted expert testimony and debate. But the practical wisdom of the trial bar and the trial bench has developed effective methods of presenting the essential elements of an expert calculation in a form that is understandable by juries that are increasingly familiar with the complexies of modern life.

*Id.* at 494, 100 S.Ct. at 757. The importance of the consideration of income taxes under the circumstances in this action is superior to any contention that such evidence is too speculative. However, should cases arise in the future where the impact of future income taxes in calculating pecuniary damages under section 5–4.3 is minimal, a determination should be made as to whether the admission of the evidence causes more confusion than it is worth. *Id.* at 494–95 n. 7, 100 S.Ct. at 757–58 n. 7. *See* Fed.R.Evid. 403.

In conclusion, the plaintiff's motion *in limine* to exclude evidence or mention of income taxes is denied. The defendants are hereby allowed to offer evidence demonstrating the income taxes that would have been imposed on Dr. Fogarty's future earnings.

SO ORDERED.