■ JOHN F. KELLY, Individually and as Executor of M. PATRICIA KELLY, Deceased, Appellant, v ST. PETER'S HOSPICE et al., Respondents.—Per Curiam. Appeal from an order of the Supreme Court (McDermott, J.), entered March 6, 1989 in Albany County, which granted defendants' motions for summary judgment dismissing the complaint.

In 1977 plaintiff's decedent, M. Patricia Kelly (hereinafter the patient), underwent a left modified radical mastectomy and related treatment for breast cancer. In March 1981 she was referred to defendant Albany Regional Cancer Center (hereinafter ARCC) where a diagnosis of metastatic breast cancer with osseous (bone) involvement was made. From 1981 through 1983, the patient received varying treatment including chemotherapy; however, the disease progressed with further extensive bone involvement particularly in her left arm. In December 1983, the patient suffered a disease-related fracture of her left radius and underwent a rodding of the fracture. On December 22, 1983, suffering from extensive pain, she had an unscheduled appointment with ARCC at which time she requested admission to defendant St. Peter's Hospice (hereinafter the Hospice). By January 4, 1984, her condition had deteriorated progressively and after a long discussion in

which her daughter, a nurse at St. Peter's Hospital, participated,* the patient was admitted to the Hospice.

At the time of admission, plaintiff, the patient's husband, was in New York City on business and unaware of these events. Although her condition was markedly debilitated, the patient was mentally alert and knowingly signed the Hospice admission consent form which states, in part: "I am aware that the care provided by the Hospice is designed solely to provide relief from the symptoms of my illness, and that the Hospice will not directly treat my disease." The phrase "the Hospice will not directly treat my disease" is repeated in the next paragraph of the consent form.

The patient received palliative care designed to comfort her and to extend the quality of life in the face of her incurable terminal illness until she passed away on March 9, 1984. Plaintiff commenced this medical malpractice action, contending in substance that the Hospice care given to the patient was not sufficiently aggressive or curative in nature. Specifically, he alleges excessive use of morphine, the failure to pin a pathological fracture and treat it with radiation therapy, a failure to insert a subclavian intravenous line for nutrition and hydration, and a failure to accede to his request that the patient be transferred to a regular hospital.

Defendants moved for summary judgment supported by affidavits from four treating physicians. While admittedly made by parties to the action, the affidavits were specific and factual in nature and were sufficient to make a prima facie showing of entitlement to judgment by eliminating the material issues of fact from the case *(see, Winegrad v New York Univ. Med. Center,* 64 NY2d 851, 853). In view of the evidence in support of the motions, it was incumbent upon plaintiff to make an evidentiary showing of the existence of a triable issue of fact. The law is well established that a party opposing a summary judgment motion must lay bare affirmative proof demonstrating that the matters he alleges are real and are capable of being established at trial *(Zuckerman v City of New York,* 49 NY2d 557, 562).

Plaintiff's opposition to the motions included an affidavit by Dr. William Whyland which discussed some of the areas of plaintiff's concerns within the hypothetical context of a person

* The Hospice, while physically located within the building generally referred to as St. Peter's Hospital in the City of Albany, is a separate medical facility from St. Peter's Hospital, with different functions and capabilities. Hospice care is provided for in Public Health Law article 40.

in a hospice with the patient's condition. Whyland states that the use of a subclavian intravenous line could add to a patient's comfort and relative health as might radiation therapy for pathological fractures. Whyland further states that extended use of morphine has a diminishing effect on the appetite. An analysis of the actual treatment rendered and an opinion on whether such care rendered departed from accepted standards of care and practice of medicine are both conspicuously absent. While Whyland's affidavit is not "bare-bones", it clearly purports to answer hypothetical questions and states that it is speculative, made without reference to the patient's medical records and, more importantly, does not state that any deviation from accepted medical practice occurred. We find this affidavit insufficient to defeat defendants' motions *(see, Burt v Lenox Hill Hosp.,* 141 AD2d 378, 380; *see also, Semel v Culliford,* 120 AD2d 901, 902).

Plaintiff further contends that the motions should not have been granted in light of the then-scheduled oral examinations before trial of defendants. However, plaintiff has neither demonstrated an ignorance of critical facts *(see, Illumalights Mfg. v Neo-Ray Prods.,* 124 AD2d 644, 645) nor an unavoidable ignorance of facts necessary to defeat the summary judgment motions *(see, Kenworthy v Town of Oyster Bay,* 116 AD2d 628, 629) which would warrant a denial on CPLR 3212 (f) grounds.

Order affirmed, without costs. Kane, J. P., Casey, Weiss, Mercure and Harvey, JJ., concur.

