■ JEANNE M. LEONARD, Appellant, v KINNEY SYSTEMS, INC., et al., Defendants, and SYOSSET COMMUNITY HOSPITAL, Respondent. [605 NYS2d 762] —In an action to recover damages for personal injuries, the plaintiff appeals, as limited by her brief, from so much of an order of the Supreme Court, Queens County (Nahman, J.), dated July 9, 1991, as granted the cross motion of the defendant Syosset Community Hospital for summary judgment dismissing the complaint insofar as it is asserted against it.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and the motion is denied.

It is well-established that on a motion for summary judgment, the court's role is limited to one of issue finding and not issue determination (see, Rotuba Extruders v Ceppos, 46 NY2d 223; Zarr v Riccio, 180 AD2d 734; Heller v Trustees of Town of E. Hampton, 166 AD2d 554). The papers should be scrutinized carefully in the light most favorable to the opposing party (see, Robinson v Strong Mem. Hosp., 98 AD2d 976) and the court should not determine issues of credibility (see, Capelin Assocs. v Globe Mfg. Corp., 34 NY2d 338, 341). The defendant Syosset Community Hospital has failed to establish the absence of any triable issues of fact.

On August 9, 1987, the plaintiff twisted her ankle when she stepped into a hole in a parking lot near Shea Stadium. Shortly thereafter, she was treated at the defendant Syosset Community Hospital (hereinafter the hospital). After some X-

rays of her left ankle were taken, which were read as demonstrating soft tissue swelling around the lateral malleolus, with no evidence of acute fracture, dislocation or bone destruction, an ace bandage was placed around her ankle and she was released.

The hospital's printed "Follow-up & After Care Instruction" form, which bears the plaintiff's signature, contains, under the heading: "Sprain and Fracture, Severe Bruises," instructions, *inter alia,* to elevate the injured part to reduce swelling, to apply ice packs during the first 48 hours, and thereafter warm moist packs, and to rewrap the elastic bandage, if it is too tight or loose. Next to the printed heading of "Other Instructions" is the notation: "Follow-up care Private M.D." The plaintiff did not seek follow-up care until some three months after the incident. On December 16, 1987, the plaintiff underwent a "lateral ankle reconstruction" after a diagnosis was made that she had sustained a complete tear of the lateral collateral ligament.

The plaintiff in her bill of particulars alleged that the hospital was negligent in (1) failing to take a proper history with reference to the injury, (2) failing to take the necessary X-rays and CAT scans of the plaintiff's left ankle, which would have indicated an unstable left ankle with evidence of medial lateral instability and anterior stability, (3) in addition to failing to diagnose ligamentation damage, failing to observe a bone chip of the left ankle, (4) not consulting with the orthopedic staff, (5) allowing the plaintiff to be discharged without suitable and proper instructions, and failing to supply any type of cast and/or support for the plaintiff's severely damaged left ankle. The bill of particulars alleged that because of this negligence, the plaintiff's left ankle continued to deteriorate to such an extent that surgical intervention in the form of reconstruction surgery was required.

In support of the cross motion for summary judgment, the hospital submitted an affidavit of Dr. Robert Leviton, a Director of Emergency Services at Franklin Hospital Medical Center and a board-certified physician in family medicine, in which Dr. Leviton concluded that the hospital did not deviate in any way from good and accepted standards of emergency medicine and that the allegations against the hospital were completely without merit. As a basis for this conclusion, he stated that the emergency room physician as well as the radiologist determined that the X-rays showed no pathology or fracture. Additionally, he recited the facts contained in the emergency room record that the patient was discharged with

a diagnosis of "sprained ankle", that she was provided with an ace bandage to support the ankle and crutches to avoid the application of weight on it, and that she was advised to see her private physician for follow-up care. He then stated that in view of the fact that the X-rays were negative for pathology or a fracture, it was his opinion that the care provided by the hospital was appropriate treatment for the injury, and that the damage to the plaintiff's left ankle were not caused or contributed to in any way by the treatment provided by the hospital, but was the result of her original fall and her failure to see her private physician until three months after she was discharged.

In opposition to the hospital's motion, the plaintiff submitted the affidavit of Dr. Elias D. Sedlin, a board-certified orthopedic surgeon, who opined that the hospital failed to appreciate the severity of the plaintiff's injuries, in that she had massive swelling and a hematoma formation, and, in addition, she had heard a "pop" at the time of the incident. According to Dr. Sedlin, these are characteristic signs of a complete tear of the lateral collateral ligament of the ankle, and that an ace bandage is very inadequate treatment for this type of injury. A bulky bandage or a splint and either plaster or an air cast should have been prescribed, and the plaintiff should have been referred directly to an orthopedic surgeon experienced with ankle trauma. Aggressive physical therapy should have been started early in her post-injury phase, and more likely than not, the surgical procedure which was subsequently performed would not have been required.

While the hospital's emergency room record under "Nurse's Notes" contains a notation: "injury to left ankle. Patient states fell in hole * * * heard a crack. Presents moderate swelling left lateral foot", the plaintiff in her affidavit stated that within seconds of the incident, her ankle became swollen. When she arrived at the hospital, the swelling had increased, her ankle was discolored, and she explained to the people in the emergency room what had happened, including the fact that she heard a popping noise at the time she twisted her ankle.

The Supreme Court granted the cross motion for summary judgment, partially on the basis that the plaintiff's expert opinion was based upon a description of the plaintiff's injuries which are unsupported by the emergency room records. Those records, although probative and relevant as to the syptomatology and history presented at the time the plaintiff was examined, are obviously not determinative of the issue. To conclude

otherwise would mean that an incorrect or incomplete notation on a hospital record could never be challenged as to its accuracy or completeness. Whether the plaintiff had massive swelling and hematoma formation as alleged by her, or simply moderate swelling as stated in the hospital record, presents an issue of fact. Whether the plaintiff heard a popping noise which she related to the hospital's staff, or simply a crack as stated in the hospital record, also presents an issue of fact.

Relative to another issue, the plaintiff in her affidavit stated that the doctor in the emergency room indicated that she had a sprained ankle and it would take two to three weeks for the pain and the discoloration to go away. She was never advised to seek further medical treatment. At the plaintiff's examination before trial, in answer to the question: "Did anyone at Syosset Hospital recommend to you or tell you to receive any further treatment?" the plaintiff answered "No." Although she later stated at that examination before trial that someone did tell her that she should follow up with her own personal physician, she claimed she was not told when, and asserted that the reason she did not follow up earlier was because she "took the word of the doctor" in the emergency room who told her "it was a sprain; it would take a couple of weeks for the discoloration to go away, and for the pain to go away".

Thus, an issue of fact presents itself as to what instructions or advice the plaintiff was given upon which she could reasonably rely. Additionally, whether or not the plaintiff's failure to consult a private physician for a period of three months after the incident was the sole proximate cause of her injuries or merely a contributing factor bearing on the issue of her comparative negligence, is also an issue to be resolved by the trier of the facts. Bracken, J. P., Eiber and Pizzuto, JJ., concur.

Balletta, J., dissents, and votes to affirm the order appealed from with the following memorandum, with which O'Brien, J., concurs: On August 9, 1987, the plaintiff twisted her ankle when she stepped into a hole in a parking lot near Shea Stadium. An hour later, she arrived at the Syosset Community Hospital (hereinafter the hospital). After some X-rays of her ankle were taken, the plaintiff was told that she only had a sprained ankle and was released after an ace bandage had been placed around the ankle.

On December 16, 1987, however, the plaintiff underwent a "lateral ankle reconstruction", after being diagnosed as having sustained a complete tear of the lateral collateral ligament. A year and a half later, she commenced this action

against Kinney Systems, Inc. (the company that leased the parking lot where she fell), the City of New York (the owner of the parking lot), the two doctors who treated her at the hospital and the hospital. With regard to the hospital, the only defendant involved on this appeal, the plaintiff alleged, *inter alia,* that it failed to properly diagnose and treat a tear of the lateral collateral ligament, and that she was discharged without adequate instructions for follow-up care.

It is well established that summary judgment will only be granted if there are no material and triable issues of fact *(see, Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404), and that "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" *(Alvarez v Prospect Hosp.,* 68 NY2d 320, 324; *see, Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853). In the instant case, the hospital's submissions on its cross motion established its entitlement to summary judgment in its favor.

In support of its cross motion for summary judgment, the hospital submitted copies of the pleadings, the emergency room records, the X-rays and an affidavit by Dr. Robert Leviton, Director of Emergency Services at Franklin Hospital Medical Center and a board-certified physician in family medicine. In his affidavit, Dr. Leviton stated, that upon review of the bill of particulars, the plaintiff's testimony at an examination before trial, and the hospital records and X-rays, the hospital and its staff had not deviated in any way from good and accepted standards of emergency medicine, and that the allegations against the hospital were completely without merit. Dr. Leviton noted that both the emergency room physician and the radiologist determined the X-rays to be negative for pathology or fracture, that the emergency room record showed that the plaintiff was discharged with a diagnosis of "sprained ankle", that she was provided with an ace bandage to support the ankle and crutches to avoid the application of weight on the affected ankle, and that she was advised to see her private physician for follow-up care. Dr. Leviton then stated that, in view of the fact that the X-rays were negative for pathology or a fracture, it was his opinion that the care provided by the hospital was appropriate treatment for the injury. It was also his opinion that the damage to the plaintiff's left ankle was not caused or contributed to in any way by the treatment provided by the hospital but, rather, that her condition was the result of her original fall and her failure to

see her private physician until three months after she was discharged.

The emergency room records indicate that the plaintiff was "admitted ambulatory" complaining of an injury to her left ankle after having "fallen in hole". The nurse's notes indicate that the plaintiff advised the emergency room staff that she "fell in hole [and] heard a crack". The physical examination revealed "moderate swelling [of the left] lateral foot. Pulses palpable, neuro intact" and that the plaintiff was "able to move all toes". The tentative diagnosis was "sprained left ankle". The radiologist's report on the X-rays made of the plaintiff's ankle states that there was "soft tissue swelling around the lateral malleolus" but that there was "no evidence of acute fracture, dislocation or bone destruction. The ankle mortise appears intact". The indicated "impression" was of "soft tissue swelling". The emergency room "Follow-up & After Care Instruction" form contains, under the heading "Sprain and Fracture, Severe Bruises", instructions, *inter alia,* to elevate the injured part to reduce swelling, to apply ice packs during the first 48 hours and thereafter warm moist packs, and to rewrap elastic bandage if it is too tight or loose. Next to the printed heading of "Other Instructions" is the notation: "Follow-up care Private M.D.". The plaintiff signed the form, acknowledging that she had received the above instructions, and that she would arrange for follow-up care as instructed.

Since the hospital made a prima facie showing of entitlement to summary judgment, the burden shifted to the plaintiff to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which would require a trial of the action *(see, Alvarez v Prospect Hosp.,* 68 NY2d 320, *supra).* Thus, it was imperative that the plaintiff "assemble, lay bare and reveal [her] proofs, in order to show that the matters set up in [her complaint] are real and are capable of being established upon a trial" *(Di Sabato v Soffes,* 9 AD2d 297, 301). However, only the existence of a bona fide issue raised by evidentiary facts and not one based on conclusory or irrelevant allegations will suffice to defeat summary judgment *(Rotuba Extruders v Ceppos,* 46 NY2d 223, 231), and mere conclusions, expressions of hope, or unsubstantiated allegations or assertions are insufficient *(see, Zuckerman v City of New York,* 49 NY2d 557, 562).

The plaintiff herein has failed to come forth with any evidentiary proof in admissible form which would defeat the hospital's entitlement to summary judgment. At most, the

plaintiff has only set forth conclusory allegations, unsubstantiated assertions, and mere expressions of hope.

In opposition to the hospital's motion, the plaintiff submitted the affidavit of Dr. Elias D. Sedlin, a board-certified orthopedic surgeon, who opined that the hospital staff failed to appreciate the severity of the plaintiff's injuries in that she had massive swelling and hematoma formation, and had heard a "pop" at the time of the incident. According to Dr. Sedlin, these are characteristic signs of a complete tear of the lateral collateral ligament of the ankle. Dr. Sedlin stated that an ace bandage is very inadequate treatment for this type of injury, and that a bulky bandage should have been applied, or a splint, as well as either a plaster or air cast, and that the plaintiff should have been referred directly to an orthopedic surgeon experienced with ankle trauma. Had aggressive physical therapy been started early in her post-injury phase, it was more likely than not that the surgical procedure which was subsequently performed would not have been required.

It is well established, however, that expert "opinion evidence must be based on facts in the record or personally known to the witness * * * He cannot reach his conclusion by assuming material facts not supported by [the] evidence" (*Cassano v Hagstrom,* 5 NY2d 643, 646; *Lipsius v White,* 91 AD2d 271, 279; *Matter of Aetna Cas. & Sur. Co. v Barile,* 86 AD2d 362, 364). In this case, Dr. Sedlin's opinion was clearly based upon "facts" that do not appear in the plaintiff's medical records at the time of the incident. Dr. Sedlin based his opinion upon the "fact" that the plaintiff had "massive swelling, hematoma formation and * * * heard a pop at the time of the incident". However, the plaintiff's emergency room records show that she only suffered moderate, not massive, swelling, and there was no indication of hematoma, and she merely complained of hearing a crack when she twisted her ankle. The plaintiff's subsequent self-serving statements are insufficient to support the expert's opinion, especially where, as here, there is no evidence to show that the emergency room records are inaccurate or incomplete. Similarly, the plaintiff's unsupported assertion that she was never told to seek further medical care is absolutely rebutted by the "Follow-up and After Care Instruction" form that she signed, which clearly directs her to obtain "Follow-up care Private M.D." *(see, Dixon v St. Francis Hosp.,* 180 AD2d 1009).

Accordingly, the Supreme Court properly granted the hospital's cross motion for summary judgment.