■ LEONARD ROSSI et al., Appellants, v ARNOT OGDEN MEDICAL CENTER et al., Respondents. [702 NYS2d 451] —Graffeo, J. Appeals (1) from an order of the Supreme Court (Ellison, J.), entered December 1, 1998 in Chemung County, which granted defendants' motion for summary judgment dismissing the complaint, and (2) from the judgment entered thereon.

Plaintiff Leonard Rossi (hereinafter plaintiff) and his wife, derivatively, commenced this medical malpractice action to recover damages for injuries allegedly arising from the care and treatment rendered by defendants Joseph Chiota and Arnot Ogden Medical Center (hereinafter AOMC) in May 1991. After receiving emergency medical treatment and care from two physicians, which included cardiac catheterization, plaintiff was diagnosed as having suffered a myocardial infarction and was referred to Chiota, board certified in internal medicine and cardiology. Chiota recommended coronary angioplasty to relieve the severe blockage in one of plaintiff's arteries. After a consultation with a cardiac surgeon, the angioplasty was performed but after discovering that the artery was not going to open, Chiota aborted the procedure. Rather than initiating

bypass surgery, he decided upon conservative medical treatment. Evidently, during the angioplasty procedure plaintiff suffered a mild myocardial infarction.

The gravamen of plaintiffs' claim is that Chiota was negligent in his recommendation for plaintiff to undergo an angioplasty and in the actual performance of the procedure. AOMC was allegedly negligent in failing to maintain an adequate quality assurance plan in connection with its angioplasty unit and for improperly permitting Chiota to perform angioplasty procedures. At the conclusion of discovery, Chiota and AOMC successfully moved for summary judgment and plaintiffs' complaint was dismissed. Plaintiffs now appeal.

It is axiomatic that once a defendant in a medical malpractice action satisfies his or her burden of demonstrating entitlement to summary judgment, plaintiff must adequately rebut defendant's prima facie showing by establishing a departure from accepted medical practice, as well as a nexus between the alleged malpractice and plaintiff's injury (*see, Horth v Mansur*, 243 AD2d 1041, 1042; *Wahila v Kerr*, 204 AD2d 935, 937). Here, Chiota submitted plaintiff's medical records, deposition testimony and the affidavit of a cardiologist who opined that based upon a reasonable degree of medical certainty, Chiota's treatment of plaintiff and his technique did not deviate from standards of accepted medical practice and that Chiota "exercised good and acceptable professional judgment". Specifically, the expert claimed that angioplasty was the appropriate course of treatment for plaintiff's condition and was in accordance with good and accepted medical practice, especially in light of plaintiff's age and stability. Chiota's expert noted that his opinion included the fact that plaintiff's subsequent mild myocardial infarction was a recognized risk of the procedure. In addition, the expert stated that Chiota adequately prepared for the contingency of bypass surgery and that his decision to treat plaintiff conservatively, rather than with bypass surgery, was within good and accepted medical practice. Accordingly, Chiota demonstrated his prima facie entitlement to summary judgment, thereby shifting the burden to plaintiff to raise a question of fact by sufficient evidentiary proof (*see, Kean v Community Gen. Hosp.*, 195 AD2d 910, 912, *lv denied* 83 NY2d 752).

In opposition to Chiota's motion, plaintiff submitted the affidavits of two cardiologists. One physician primarily addressed the hospital's quality assurance program, while the other cardiologist opined that the angioplasty "was not indicated and should not have been performed" and that further testing to

determine ongoing ischemia, apparently with a treadmill test, should have been undertaken before surgery. However, this expert neither indicated that Chiota departed from accepted medical practice nor related Chiota's alleged malpractice to plaintiff's injury. Moreover, the expert's suggestion that Chiota failed to have an emergency surgery backup plan is contradicted by the record, including two references in the consultation report of the cardiac surgeon, dated May 22, 1991. Viewing the evidence in a light most favorable to plaintiffs as is required in a motion for summary judgment (*see, Horth v Mansur, supra,* at 1042), we conclude that the expert affidavit submitted on behalf of plaintiffs failed to raise a triable issue of fact. The expert's conclusory statement that the procedure was not indicated, without more, was insufficient to establish a deviation from accepted medical practices and the requisite nexus between the alleged malpractice and injury (*see, Kean v Community Gen. Hosp., supra,* at 912-913; *Fridovich v David,* 188 AD2d 984, 985-986; *Dennis v St. Peter's Hosp.,* 163 AD2d 703, 704-705; *see also, Koeppel v Park,* 228 AD2d 288, 289-290; *Stuart v Ellis Hosp.,* 198 AD2d 559, 560-561; *Kelly v St. Peter's Hospice,* 160 AD2d 1123, 1124-1125).

Next, plaintiffs' contention that liability may be imposed against AOMC based upon the improper implementation of quality assurance programs is unavailing. Initially, we find no support in the record for plaintiffs' assertion that Chiota's privileges should have been suspended (*see generally, Sledziewski v Cioffi,* 137 AD2d 186). Although the record contains evidence demonstrating that AOMC's quality assurance program was under investigation by the Department of Health subsequent to plaintiff's treatment, we find no proof which establishes a causal link to plaintiff's injuries. Therefore, Supreme Court properly granted AOMC's motion for summary judgment dismissing the complaint.

Cardona, P. J., Mercure, Crew III and Carpinello, JJ., concur. Ordered that the order and judgment are affirmed, with costs.