356

[888 NYS2d 705]

AMANDA ASSENZA, an Infant, by Her Father and Natural Guardian, DAVID ASSENZA, et al., Plaintiffs, v MARK HOROWITZ, M.D., et al., Defendants.

Supreme Court, Richmond County, October 9, 2009

**APPEARANCES OF COUNSEL**

*Amabile & Erman, P.C.*, for Arthur Buonaspina, M.D., defendant. *Keller O'Reilly & Watson, P.C.*, for Mark Horowitz, M.D., defendant. *Wilson Elser Moskowitz Edelman & Dicker, LLP*, for

Staten Island University Hospital, defendant. *Sgarlato & Sgarlato, PLLC*, for plaintiffs.

OPINION OF THE COURT

JOSEPH J. MALTESE, J.

The motion of Arthur Buonaspina, M.D. for summary judgment pursuant to Civil Practice Law and Rules § 3212[1] is denied. The cross motion for summary judgment made by Mark Horowitz, M.D. was supported by his own "expert" affidavit without adding impartial expert opinion. A "self-serving" affidavit requires scrutiny to assess its weight, but it is admissible. However, Dr. Horowitz failed to provide supporting proof to his cross motion[2] and it is denied. Cross motion by Amanda Assenza and her father, David Assenza, to deny Dr. Buonaspina's motion is granted. The cross motion by Amanda and David Assenza pursuant to CPLR 8303-a[3] seeking sanctions, costs, disbursements and attorney fees is denied.

Facts

On October 11, 2005, Amanda was admitted to Staten Island University Hospital (SIUH). That day, Amanda had ureter and bladder surgery. The night following her surgery, Amanda's bladder was catheterized, bloody urine was drained, and the catheter was removed. Amanda had difficulty urinating through the next day, evening and night and a nurse telephoned Dr. Horowitz who again gave an order to catheterize her. Dr. Horowitz testified that he spoke on the telephone to Debra Assenza. Dr. Horowitz asserts that Amanda's mother gave consent for the catheterization, and that she "did not express hesitancy" regarding the plan.[4] Debra Assenza later said doing the procedure was "OK,"[5] and affirmed she never refused the procedure. There is no record Debra Assenza signed a formal consent for this catheterization.

---

1. CPLR 3212 (a).
2. CPLR 3212 (b).
3. CPLR 8303-a (a).
4. Defendant Dr. Horowitz's notice of cross motion, exhibit F, affidavit of Dr. Horowitz.
5. Defendant Dr. Horowitz's notice of cross motion, exhibit E, examination before trial of Debra Assenza, at 59 (line 8)—62 (line 9).

Dr. Juae Cynthia Chang, the pediatric resident on call, saw Amanda's mother before catheterizing Amanda again. Dr. Chang said that she was repeatedly asked, "if we can avoid the catheterization."[6] Dr. Chang consulted with Dr. Buonaspina, who was then present. As a result, Amanda was not catheterized. Dr. Buonaspina accepted Dr. Chang's reported conversation with Amanda's mother, and countermanded Dr. Horowitz's order. Dr. Buonaspina then ordered that Amanda be observed rather than be catheterized. In his view, catheterizing Amanda would have been contrary to Debra Assenza's expressed wishes.[7] Dr. Buonaspina said that he asked Dr. Horowitz be called to confirm concurrence with this new plan: observing, not catheterizing. The next day, October 13, 2005, fluid exuded from Amanda's abdominal wound.[8] A perforation of the bladder with leakage of urine was subsequently confirmed,[9] and Amanda's bladder leakage was repaired on October 17, 2005. She was discharged from SIUH on October 20, 2005.

## Discussion

A motion for summary judgment requires "the cause of action or defense shall be established sufficiently to warrant the court . . . directing judgment in favor of any party."[10] The proponent has the burden of tendering sufficient evidence to preclude material issues of fact.[11] Once the moving party has made a showing of sufficient evidence, the burden shifts to the opposing party to put forth admissible evidence to establish a triable issue for the factfinder.[12] In medical malpractice, the party opposing must submit opposing proof.[13]

---

**6.** Defendant Dr. Buonaspina's notice of motion, exhibit I, examination before trial, at 12, lines 14-20.

**7.** Defendant Dr. Buonaspina's notice of motion, exhibit J, examination before trial, at 60, lines 21-25.

**8.** Defendant Dr. Buonaspina's notice of motion, exhibit E, progress notes of Oct. 13, 2005 *et seq.*

**9.** Defendant Dr. Buonaspina's notice of motion, exhibit E, progress notes Oct. 14, 2005 *et seq.*; report of CT abdomen/pelvis, CT cystogram.

**10.** CPLR 3212 (b); *see also Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 (1978), quoting *Moskowitz v Garlock*, 23 AD2d 943, 944 (1965); *Herrin v Airborne Frgt. Corp.*, 301 AD2d 500, 500-501 (2d Dept 2003).

**11.** *Wasserman v Carella*, 307 AD2d 225, 226 (1st Dept 2003).

**12.** *Zuckerman v City of New York*, 49 NY2d 557, 562 (1980); *Matter of Javon T.*, 64 AD3d 608, 608 (2d Dept 2009).

**13.** *Fileccia v Massapequa Gen. Hosp.*, 63 NY2d 639 (1984).

## I. Dr. Horowitz's Cross Motion for Summary Judgment

Dr. Horowitz has submitted his own affidavit, offered explicitly as an "expert opinion,"[14] but does not provide an additional opinion from an independent, impartial expert. For authority, Dr. Horowitz relies upon a judicial decision in which a lay plaintiff offered only her own affidavit stating that unnamed doctors said part of her treatment was unnecessary.[15] In that case, the physician defendant did not offer an independent expert's opinion. The court said "expert opinion evidence from a party defendant which bears a strong factual relationship to the alleged injury requires an expert response from the plaintiff."[16]

Dr. Horowitz also relies upon *Toomey v Adirondack Surgical Assoc.*, wherein a defendant physician's affidavit as an expert opinion was accepted when it was "detailed, specific and factual in nature and does not assert in simple conclusory form that the physician acted within the accepted standards of medical care."[17] *Toomey*, relied upon a chain of preceding cases in which a defendant physician's affidavit was accepted by the court with "sufficient evidence to eliminate any material issues of fact from the case."[18] These cases ultimately rely upon the Court of Appeals when it said "bare conclusory assertions echoed by all three defendants that they did not deviate from good and accepted medical practices, with no factual relationship to the alleged injury, do not establish that the cause of action has no merit."[19] In *Toomey*, its additional antecedents,[20] and its descendants,[21] the Appellate Division, Third Department jumps from requiring factual assertions related to an alleged injury, and lands upon an acceptance of a self-serving statement as a valid expert opinion.

---

**14.** Defendant Dr. Horowitz's notice of cross motion, affirmation in opposition, at 8, 13-14.

**15.** *Wind v Cacho*, 111 AD2d 808, 809 (2d Dept 1985).

**16.** *Id.* at 808.

**17.** 280 AD2d 754, 755 (2001).

**18.** *Sloane v Repsher*, 263 AD2d 906, 908 (3d Dept 1999), quoting *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 (1985); *Machac v Anderson*, 261 AD2d 811, 812 (3d Dept 1999); *Kelly v St. Peter's Hospice*, 160 AD2d 1123 (3d Dept 1990).

**19.** *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 (1985).

**20.** *Conti v Albany Med. Ctr. Hosp.*, 159 AD2d 772 (3d Dept 1990), *lv denied* 76 NY2d 702 (1990).

**21.** *Amodio v Wolpert*, 52 AD3d 1078, 1079 (3d Dept 2008); *Suib v Keller*, 6 AD3d 805, 806 (3d Dept 2004).

In the Appellate Division, Second Department, a plaintiff failed to establish a prima facie case by not submitting an expert opinion, but relied only upon the affirmation of counsel.[22] In that case, the defendant doctor supplied an affidavit, but not an independent medical expert,[23] and the court concluded that "[a]n affidavit of an independent medical expert was not required here."[24] In other cases, the Appellate Division, Second Department permitted a self-serving affidavit of a physician defendant,[25] and that of a dentist defendant presenting "his own expert affidavit . . . and the plaintiff's medical and dental records."[26] The Appellate Division, Second Department found deficiency in a plaintiff's expert's opinion because it was merely speculative in assigning negligence.[27] That case cites *Toomey*: "[t]he defendants established, prima facie, their entitlement to summary judgment based on their affidavits which were detailed, specific, and factual in nature indicating that their treatment of the infant plaintiff did not depart from good and accepted medical practice."[28] This court deduces from this line of cases that plaintiff must offer expert medical opinion without which no prima facie case of medical malpractice is valid. This court concedes to precedent suggesting a physician defendant may offer a self-serving affidavit as an expert opinion *in lieu* of the opinion of a disinterested nonparty expert.

Here, Dr. Horowitz's self-serving affidavit is set against plaintiffs' expert opinion offered as being impartial. Ideally, an impartial expert opinion should be countered by an opposing disinterested expert opinion. Expert opinions should assist the court and its factfinders, and not be mere partisan exhortations. The Court of Appeals has held that in medical malpractice, "expert testimony of a medical nature will be required to assist the jury in understanding."[29] The Appellate Division, Second Department requires opposing expert opinions in suits founded upon medical malpractice,[30] and accepted a defendant doctor's

22. *Thomas v Richie*, 8 AD3d 363 (2d Dept 2004).
23. *Id.* at 364.
24. *Id.*
25. *Colao v St. Vincent's Med. Ctr.*, 65 AD3d 660, 661 (2d Dept 2009).
26. *Starr v Rogers*, 44 AD3d 646, 648 (2d Dept 2007).
27. *Joyner-Pack v Sykes*, 54 AD3d 727, 729 (2d Dept 2008); *see also Horth v Mansur*, 243 AD2d 1041, 1043 (3d Dept 1997).
28. *Joyner-Pack v Sykes* at 729; *see also Weiner v Lenox Hill Hosp.*, 88 NY2d 784, 789 (1996).
29. *Weiner v Lenox Hill Hosp.* at 789.
30. *Wager v Hainline*, 29 AD3d 569, 571 (2d Dept 2006); *Wind v Cacho*, 111 AD2d at 808.

affidavit, accompanied by an independent expert's opinion.[31] Other courts have followed this precedent,[32] but Dr. Horowitz presents only his own affidavit,[33] without additional supporting impartial expert testimony.

Impartiality should be the touchstone of an expert opinion. To assume that an expert witness would be partial would do "gross injustice" to the expert and the expert's integrity.[34] A court may appoint an impartial expert to assist its determinations.[35] At least one court has disregarded expert advice when it appeared to be biased.[36] Despite a line of cases that accept self-serving "expert" opinions, the Appellate Division, Third Department has also extolled the impartial expert. "The opinions of the impartial specialist . . . provide substantial evidence to support [a] decision."[37] The Appellate Division, Second Department affirmed the underlying principle when it said, "self-serving statements are insufficient to support the expert's opinion,"[38] and found that a close relationship between a party and the expert may prevent a fair and impartial hearing.[39] In medical malpractice the moving party must present something other than "[c]onclusory, self-serving statements with no expert . . . evidence which would tend to establish, *prima facie*, that they did not depart from the requisite standard of care."[40] It has been long held that there is need for expert testimony in actions based on alleged medi-

**31.** *Wager v Hainline*, 29 AD3d at 569-570.

**32.** *Demeter v Memorial Hosp. for Cancer & Allied Diseases*, 156 Misc 2d 688, 689-690 (Sup Ct, NY County 1993); *Carrasquillo v Rothschild*, 110 Misc 2d 758, 760 (Sup Ct, Bronx County 1981).

**33.** Defendant Dr. Horowitz's notice of cross motion, exhibit F, affidavit of Dr. Horowitz.

**34.** *Carrasquillo v Rothschild*, 110 Misc 2d at 758.

**35.** CPLR 3036 (2).

**36.** *Estate of Warhol*, NYLJ, Apr. 18, 1994, at 29, col 5, col 5 n 8, 1994 NY Misc LEXIS 687, *18, *18 n 8 (Sur Ct, NY County 1994).

**37.** *Matter of Garrio v Donovan*, 290 AD2d 913, 914 (3d Dept 2002); *see also Matter of Mayers v Kings County Hosp.*, 29 AD3d 1239, 1240 (3d Dept 2006).

**38.** *Leonard v Kinney Sys.*, 199 AD2d 470, 476 (2d Dept 1993).

**39.** *Matter of D.R.W. v State of New York, Dept. of Health State Bd. for Professional Med. Conduct*, 116 Misc 2d 655, 656 (Sup Ct, Special Term, NY County 1982).

**40.** *Gonzalez v Ellenberg*, 5 Misc 3d 1023(A), 2004 NY Slip Op 51518(U) (Sup Ct, NY County 2004), quoting *Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo*, 259 AD2d 282, 284 (1st Dept 1999).

cal malpractice unless the trier of fact may make a determination based solely on common knowledge.[41]

No one may be prevented from being a witness because of interest in, or being a party to an action.[42] However, not all testimony carries the same weight. In addition to possible monetary interests, avoiding blame may discredit a witness.[43] "[P]arty plaintiffs or defendants are always interested witnesses, since they have a motive to shield themselves from blame."[44] Potentially self-serving motives, prompt a special charge to the jury.[45] The court should issue a special charge for evidence provided by an interested party,[46] and instruct the jury to consider any interest the witness may have in the outcome of the case.[47] Public policy should require that an expert opinion be impartial and be factually supported.

Dr. Horowitz's cross motion for summary judgment is unopposed by all other parties. However, Dr. Horowitz's affidavit must be supported by "other available proof, such as depositions and written admissions."[48] "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers."[49] The Appellate Division, Second Department notes the presence of supporting medical records in some discussions,[50] while in other instances it has been silent about the presence of supporting medical records.[51] The absence of supporting evidence is not specifically excused, and supporting an affidavit with the medical record seems to be favored. The Appellate Division, Third Department has generally noted

---

**41.** *Pike v Honsinger*, 155 NY 201, 210-211 (1898); *Tighe v Ginsberg*, 146 AD2d 268, 269-270 (4th Dept 1989).

**42.** CPLR 4512.

**43.** *Coleman v New York City Tr. Auth.*, 37 NY2d 137, 144 (1975).

**44.** *Andresen v Kirschner*, 190 Misc 2d 779, 781 (Sup Ct, NY County 2001), *revd on other grounds* 297 AD2d 235 (1st Dept 2002).

**45.** *Lowenstein v Normandy Group, LLC*, 51 AD3d 517, 518-519 (1st Dept 2008).

**46.** *Coleman* at 141-142.

**47.** *See generally* PJI 1:91.

**48.** CPLR 3212 (b).

**49.** *Winegrad*, 64 NY2d at 853.

**50.** *Thomas v Richie*, 8 AD3d at 363; *Starr v Rogers*, 44 AD3d at 648.

**51.** *Joyner-Pack v Sykes*, 54 AD3d at 727; *Colao v St. Vincent's Med. Ctr.*, 65 AD3d 660, 660-662 (2009).

reviewing medical records,[52] but has not always been explicit about the type of supporting records.[53] Nonetheless, evidence must be "sufficient, competent, admissible evidence."[54] Similarly, the Appellate Division, Fourth Department calls for "undisputed" supporting evidence.[55] In the Appellate Division, Second Department, sufficient facts presented in support of a motion for summary judgment made by the defendant physician include the physician's affidavit and the medical record itself.[56] Additional proofs are lacking here.

Dr. Horowitz's affidavit could have shifted the burden to the plaintiffs upon his cross motion for summary judgment had he submitted supporting evidence sufficient to eliminate material issues of fact. The plaintiffs were required to present an expert opinion in order to sustain this action against Dr. Horowitz, because it is based upon medical malpractice. This burden was not met since plaintiffs' expert did not oppose Dr. Horowitz's cross motion for summary judgment. However, in the Appellate Division, Second Department, a proper motion for summary judgment made by a physician must include the physician's affidavit and must be supported by the medical record, or at the least some other factual support. Dr. Horowitz failed to include "sufficient evidence to eliminate any material issues of fact from the case."[57] Dr. Horowitz should have supplied the required medical or other factual record to support his assertions.[58] Since Dr. Horowitz failed in his motion for summary judgment on procedural grounds, the cross claims are not extinguished, and his lack of impartial expert support is ultimately not even considered.

II. Dr. Buonaspina's Motion for Summary Judgment

In supporting Dr. Buonaspina's motion for summary judgment, Robin Altman, M.D. asserts that Dr. Buonaspina did not deviate from accepted standards of medical practice and that Dr. Buonaspina's alleged acts or omissions were not the

**52.** *Horth v Mansur*, 243 AD2d at 1042, quoting *Conti v Albany Med. Ctr. Hosp.*, 159 AD2d at 774; *Sloane v Repsher*, 263 AD2d at 908; *Buonagurio v Drago*, 65 AD2d 830 (3d Dept 1978).

**53.** *Amodio v Wolpert*, 52 AD3d at 1080; *Suib v Keller*, 6 AD3d at 805.

**54.** *Toomey v Adirondack Surgical Assoc.*, 280 AD2d at 754; *see also Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 (1986).

**55.** *Mackey v Sangani*, 238 AD2d 919, 920 (4th Dept 1997).

**56.** *Thomas v Richie*, 8 AD3d at 364.

**57.** *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d at 853.

**58.** *Thomas v Richie*, 8 AD3d at 364.

proximate cause of Amanda's injuries.[59] These are conclusory statements and not dispositive. Dr. Altman states that Dr. Buonaspina is permitted to rely upon his understanding gotten from Dr. Chang that Debra Assenza refused her daughter's catheterization.[60] Further, Dr. Altman was of the opinion that Dr. Buonaspina was not required to himself call Dr. Horowitz or the urology resident once he instructed Dr. Chang to notify Dr. Horowitz of the change in plan.[61] Dr. Altman concluded that Dr. Buonaspina's acts and omissions did not cause Amanda's bladder leakage.[62]

In contrast to Dr. Altman's opinions, the plaintiffs' expert's opinion was that Dr. Buonaspina and Dr. Chang did not render appropriate care when they failed to follow Dr. Horowitz's orders to catheterize Amanda.[63] Dr. Altman opined that failure to catheterize Amanda between October 12 and 13, 2005, caused increased urinary bladder pressure resulting in bladder leakage.[64] These conflicts are for a jury to decide.[65] "[T]he resolution of issues regarding the credibility of both expert and lay witnesses and the accuracy of their testimony are matters peculiarly within the province of the jury."[66]

## III. Plaintiffs' Cross Motion for Sanctions, Costs and Disbursements and Attorney Fees

The plaintiffs allege that Dr. Buonaspina's motion is frivolous and without merit,[67] and cross-move for sanctions, motion costs and disbursements, and reasonable attorney fees to be awarded to the plaintiffs by the defendant Dr. Buonaspina. Frivolous conduct is defined as conduct that is "completely without merit"[68] and "undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure an-

---

**59.** Defendant Dr. Buonaspina's notice of motion, exhibit L, Dr. Altman's affirmation ¶ 2.

**60.** *Id.* ¶ 29.

**61.** *Id.* ¶ 30.

**62.** *Id.*

**63.** *Id.* ¶¶ 8, 12.

**64.** *Id.* ¶¶ 8, 11, 12.

**65.** *Halkias v Otolaryngology-Facial Plastic Surgery Assoc.*, 282 AD2d 650, 651 (2d Dept 2001).

**66.** *Miller v Long Is. Light. Co.*, 166 AD2d 564, 565 (2d Dept 1990); *see also Halkias v Otolaryngology-Facial Plastic Surgery Assoc.*, 282 AD2d at 651.

**67.** CPLR 8303-a (a).

**68.** 22 NYCRR 130-1.1 (c) (1).

other."[69] The Appellate Division, Second Department defines a frivolous claim as "without any reasonable basis in law or fact and could not be supported by a good faith argument for an extension, modification, or reversal of existing law."[70] The outcome of a motion is not consequential in determining whether it is frivolous.[71]

Sanctions are within the sound discretion of the court and are reserved for serious transgressions. The court does not find that Dr. Buonaspina engaged in frivolous motion practice. Dr. Buonaspina's motions were not "commenced, used or continued in bad faith, solely to delay or prolong the resolution of the litigation or to harass or maliciously injure"[72] and were not "without any reasonable basis in law or fact."[73] The plaintiffs' cross motion for sanctions, costs, disbursements, and attorney fees is denied.

## Conclusion

Dr. Horowitz's cross motion for summary judgment is procedurally defective. There are obvious differences between the facts as stated by the parties, and opposing experts' opinions. Furthermore, Dr. Buonaspina's motion is not frivolous.

Accordingly, it is hereby ordered, that the defendant Arthur Buonaspina, M.D.'s motions for summary judgment, for dismissal of cross claims, amending of the caption, severing the action, and dismissing the action against him are denied in their entirety; and it is further ordered, that the defendant Mark Horowitz, M.D.'s motions for summary judgment, for dismissal of cross claims, amending of the caption, severing the action, and dismissing the action against him are denied in their entirety; and it is further ordered, that the cross motion of the plaintiffs Amanda Assenza and David Assenza is granted to the extent that the motion for summary judgment made by Arthur Buonaspina, M.D. is denied; and it is further ordered, that the cross motion of Amanda Assenza and David Assenza is denied to the extent that motion for sanctions, costs and disbursements, and attorneys' fees is denied.

---

69. 22 NYCRR 130-1.1 (c) (2).
70. *Zysk v Kaufman, Borgeest & Ryan, LLP*, 53 AD3d 482 (2d Dept 2008).
71. *Mazo v NYRAC, Inc.*, 191 AD2d 617 (2d Dept 1993).
72. CPLR 8303-a (c) (i).
73. CPLR 8303-a (c) (ii).